## UNITED STATES *v.* GARBISH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF LOUISIANA.

No. 362.   Argued November 7, 1911.—Decided December 11, 1911.

Under the act of August 1, 1892, 27 Stat. 340, c. 352, restricting service
of laborers employed on public works of the United States to eight·
hours a day except in cases of extraordinary emergency, the excep-
tion does not relate to contemplated emergencies necessarily inhering
in the work, ·or to mere requirements of business convenience or
pecuniary advantage, but only those exceeding the common degree.

This court assumes that Congress uses a ·phrase in a statute with a
consciousness of its meaning and with the intention of conveying
such meaning.

A contractor for public works has the statute before him and can gov-
ern himself accordingly.   There is no hardship in holding him to its
terms.

An intention of Congress to exempt from provisions of a general stat-
ute declaring a public policy a conspicuous public work, such as
repairing levees of the Mississippi river, would undoubtedly have
been expressed; and *held*, that the continuing necessity of prompt
completion of the work on such levees cannot be classed as an ex-
traordinary emergency within the meaning of the Eight Hour Law
of 1892.

*Quære*, to what extent the court can take judicial knowledge of neces-
sity for and conditions of a public improvement such as Mississippi
river levees.

180 Fed. Rep. 502, reversed.

THE facts, which involve the construction of the Fed-
eral Eight Hour Labor Law, are stated in the opinion.

*The Solicitor General* for the United States.

*Mr. E. D. Saunders* for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the
court.

Defendant in error was indicted for violation of the act.

of Congress of August 1, 1892, c. 352, 27 Stat. 340, which restricts the service and employment of all laborers and mechanics who are now or may hereafter be employed by the Government or by any contractor or subcontractor, upon any of the public works of the United States, to eight hours in any one calendar day, and makes it unlawful for any officer of the Government or any such contractor to require or permit any such laborer to work a longer time "except in cases of extraordinary emergency."

The indictment set out in proper form that defendant in error had violated the law by permitting and requiring his employés engaged in building a public levee on the Mississippi River, which was part of the public works of the United States, to work more than eight hours " on the 17th day of August, 1908, at a time and under circumstances when there was no extraordinary emergency, for the reason that at that season of the year, to-wit, during the months of August, September, October, and November and December, the waters of the Mississippi River annually fall below the level of the surrounding land and are retained within the banks of said river without the necessity of any artificial levees, as was true on August 17, 1908." It is further charged that the levees were being constructed in the usual and ordinary course of levee building done annually for the increase in size and strength of such levees, in preparation for the high waters that come down the river, the levees being of standard size and sufficient to resist usual high water, but not unusual high waters, that occasionally, although not every year, come down the river, it being the policy, rule and custom of the Government to increase the standard of levees by destroying inferior levees and replacing them with stronger and higher ones year by year until the levees shall all be brought to a standard able to withstand any unusual floods. And it is further charged that the particular

work which the defendant in error was constructing was nothing unusual or out of the ordinary, but was being done in pursuance of the policy indicated and at the usual time, so as to allow the levee time to settle and pack and become ready and able to serve the purposes for which it was constructed; that is, to withstand and retain the high waters of the Mississippi river before their usual annual rise, and the time of construction being the usual and customary time to so complete and perfect the levee, before the annual rise of the waters, as would exist in the construction of any levee on the river "any year and at any place and by any contractor, all of whom know, as did the said Garbish, that the waters of the Mississippi river annually fall and are retained within the natural banks thereof during the period or season aforesaid, and begin to rise above the natural banks thereof, and therefore to need artificial levees to retain them, in the month of January each year." ·

Defendant demurred to the indictment, on the ground that it did not set forth any offense against the laws of the United States or any violation of the laws of the United States. The demurrer was sustained.

In passing upon the demurrer the court said that the defendant rested his case upon the proposition "that the building of levees on the Mississippi River, in the Eastern District of Louisiana, at all times presents an extraordinary emergency," and hence that the work on the river is exempt from the operation of the law. The court took judicial notice of the fact asserted and sustained the conclusion from it. The court said that certain facts were within the common knowledge of the people of the district, which, taken in connection with the specific allegations of the indictment, overcame the mere conclusion of the pleader that no extraordinary emergency existed, and instanced the following: The work on the levees was absolutely necessary for the preservation of property

and the cultivation of the land; therefore it has always been usual for levee work to proceed with the utmost dispatch, and the labor of the day has never been restricted to eight hours. It is necessary, the court said, that the levees be built in as short a time as possible, that they may settle and that the 'grass may become well rooted on them before they are called upon to bear the strain of the high river.

From these facts the court assumed the existence of others, as follows (180 Fed. Rep. 502, 503).:

"It is true that the months of August, September, October, November and December are the most favorable for levee building, but there is no certainty that during any part of these months the river will maintain a low stage. When the river is bank full, necessarily no levees can be built. Statistics of the river's height, at New Orleans, show that during the past 25 years the river has been bank full on nearly every day of the year, and these statistics may well apply to the locality where the defendant was working. An unprecedented rain, or an early freeze followed by a thaw, anywhere in the valley of the Mississippi River or its tributaries, might unexpectedly cause the river to rise at New Orleans. No one can foresee or anticipate the acts of nature, and who can say that a few days' more time, in which it might have become solidified, would not have so materially added to the levee's strength as to enable it to withstand the pressure, and without which it might signally fail."

The Government insists that the court assumed too extensive a judicial knowledge, and urges that the most important of the assumed facts, that the river has been bank full almost every day in the year, and the extension of the fact to the locality where defendant was working, is contradicted by the official hydrographs, 1871 to 1907 and 1907 to 1911, attached to the Government's brief, from which it appears that at Carrollton, which is a

few miles above New Orleans and a few miles below St. James Parish, the river, from 1872 to 1910, had never been above the stage at which it begins to interfere with the construction of levees, in August, September, October and November, and only a few days in August, 1875, touched that stage; and the Government further contends that it was not a matter to be judicially taken notice of that the work could not be properly expedited unless the laborers be employed more than eight hours a day. But aside from these considerations, it has been decided that no mere requirement of business convenience or pecuniary advantage is an extraordinary emergency within the meaning of the act. *Ellis* v. *United States*, 206 U. S. 246, 256, 257. And, besides, the extraordinary emergency which relieves from the act is not one that is contemplated and inheres necessarily in the work. *United States* v. *Sheridan-Kirk Contract Co.*, 149 Fed. Rep. 809. It is a special occurrence, and the phrase used emphasizes this. It is not an emergency simply which is expressed by it, something merely sudden and unexpected, but an extraordinary one, one exceeding the common degree. We must assume that the phrase was used with a consciousness of its meaning and with the intention of conveying such meaning. As said by the Solicitor General, "the phrase 'continuing extraordinary emergency' is self-contradictory."

The building and repair of levees on the Mississippi River is one of the most important and conspicuous of the public works of the United States, and if it had been intended to exempt it from the provisions of the act of August 1, 1892, which declared a public policy in regard to labor, it would have been expressed. There is no hardship in this to a contractor. He has before him the law and the conditions affecting the work which he may undertake and can govern himself accordingly.

*Judgment reversed and cause remanded with directions to overrule the demurrer.*