UNITED STATES v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1913.)

No. 3,998.

1. MASTER AND SERVANT (§ 13*) — EMPLOYMENT — REGULATION — INTERSTATE CARRIERS—HOURS OF SERVICE LAW—"EMERGENCY."

    The term "emergency," as used in the Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), providing that train dispatchers employed in interstate commerce shall not be compelled to be or remain on duty longer than 9 hours in any 24-hour period in stations continuously operated night and day, except in case of emergency, includes any event or occasional combination of circumstances

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which calls for immediate action or remedy; pressing necessity; exigency; sudden or unexpected happening; or unforeseen occurrence or condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 3, p. 2361.]

2. MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE LAW—TRAIN DISPATCHERS —DUTY—EMERGENCY.

Defendant, an interstate carrier, maintained at a division point a chief train dispatcher, who had charge of the office and supervision of six subordinate train dispatchers, who performed their duties by working in pairs, 8-hour shifts in each 24 hours. The chief dispatcher was an executive officer under the superintendent of division, and had no duties to perform with reference to the actual operation of the telegraph. All of the six operators had been continuously employed in the office from 15 months to 8 years, and for 7 years immediately preceding the trial but two occasions had arisen when dispatchers unexpectedly failed to report for duty. On August 27, 1912, one of the dispatchers became suddenly ill and did not report for duty until September 2d. The chief dispatcher made diligent effort to obtain another to take his place, but was unable to do so. During the illness of the absent dispatcher the other operators were required to work more than 9 hours in each period of 24. *Held*, that the chief dispatcher was not required to himself take the place of the absent employé, and that necessary absence constituted an "emergency," within Hours of Service Law (Act March 4, 1907, c. 2939) § 2, 34 Stat. 1415 (U. S. Comp. St. Supp. 1911, p. 1321), prohibiting the employment of train dispatchers for a longer period than 9 hours in any 24, except in case of emergency.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

3. TIME (§ 6*)—HOURS OF SERVICE LAW—INTERSTATE CARRIERS—"WEEK."

Hours of Service Law (Act March 4, 1907, c. 2939) § 2, 34 Stat. 1415 (U. S. Comp. St. Supp. 1911, p. 1321), prohibits any interstate carrier to require that a train dispatcher be and remain on duty for more than 9 hours in any 24-hour period at stations continuously operated night and day, except in case of emergency, when such employé may be permitted to remain on duty for 4 additional hours in a 24-hour period on not exceeding 3 days in any week. *Held*, that the word "week," as so used, was intended to mean a period of 7 days, and not necessarily a calendar week, and that the statute was therefore not violated if no employé worked overtime more than 3 days out of 7.

[Ed. Note.—For other cases, see Time, Cent. Dig. § 9; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 8, pp. 7427, 7428, 7834.]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by the United States against the Southern Pacific Company to recover penalties for alleged violation of the Hours of Service Law. Judgment for defendant, and the United States brings error. Affirmed.

Philip J. Doherty, of Washington, D. C. (Hiram E. Booth, U. S. Atty., of Salt Lake City, Utah, on the brief), for the United States.

George H. Smith, of Salt Lake City, Utah (P. L. Williams, of Salt Lake City, Utah, William F. Herrin, of San Francisco, Cal., and John V. Lyle, of Salt Lake City, Utah, on the brief), for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before HOOK and CARLAND, Circuit Judges, and VAN VALK-ENBURGH, District Judge.

CARLAND, Circuit Judge. The United States brought this action to recover from the Southern Pacific Company (hereinafter called the "Company") the sum of $6,000 as penalties for the violation of an act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon. (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]). The complaint contained 12 counts, on each of which a penalty of $500 was demanded. At the trial, the facts being undisputed, the court directed the jury to return a verdict for the Company. The United States brings the case here, assigning as error such ruling of the court.

The facts appearing at the trial are as follows: The Company is a common carrier engaged in interstate commerce in the state of Utah. At Ogden, in said state, it maintains a train dispatcher's office continuously operated night and day. H. H. Hoover, C. M. Sewall, F. F. Small, and Edward Miller were employés of the Company in said office, engaged in using the telegraph to report, transmit, receive, and deliver orders pertaining to or affecting train movements. The business of train dispatching at Ogden in the months of August and September, 1912, was performed by a chief train dispatcher, who had charge of the office and supervision and direction of six operators or train dispatchers employed in the same. The division of railroad over which this office had jurisdiction extended from Ogden, Utah, to Carlin, Nev., a distance of 149 miles. The six train dispatchers performed their duties by working 8-hour "tricks," so called. The first trick extended from 7 o'clock a. m. to 3 p. m.; the second, from 3 o'clock p. m. to 11 o'clock p. m.; and the third, from 11 o'clock p. m. to 7 o'clock a. m.—two dispatchers to each trick. The chief dispatcher was an executive officer under the superintendent of division and had no duty to perform with reference to the actual operation of the telegraph. However, he could operate the telegraph. An operator or train dispatcher by the name of Johnson, employed in the Ogden office by the Company, on August 27, 1912, became suddenly ill and did not report for duty till September 2d. By reason of the illness of Johnson, the operators hereinbefore mentioned were required to work as follows:

H. H. Hoover from 3 p. m. August 27, 1912, to 3 a. m. August 28, 1912.

H. H. Hoover from 3 p. m. August 28, 1912, to 3 a. m. August 29, 1912.

H. H. Hoover from 3 p. m. August 29, 1912, to 3 a. m. August 30, 1912.

C. M. Sewall from 3 a. m. August 29, 1912, to 3 p. m. August 29, 1912.

C. M. Sewall from 3 a. m. August 30, 1912, to 3 p. m. August 30, 1912.

C. M. Sewall from 3 a. m. August 31, 1912, to 3 p. m. August 31, 1912.

F. F. Small from 3 p. m. August 30, 1912, to 3 a. m. August 31, 1912.

F. F. Small from 3 p. m. August 31, 1912, to 3 a. m. September 1, 1912.

F. F. Small from 3 p. m. September 1, 1912, to 3 a. m. September 2, 1912.

Edward Miller from 3 a. m. September 1, 1912, to 3 p. m. September 1, 1912.

Edward Miller from 3 a. m. September 2, 1912, to 3 p. m. September 2, 1912.

Edward Miller from 3 a. m. September 3, 1912, to 3 p. m. September 3, 1912.

The chief train dispatcher after diligent effort was unable to obtain an operator or train dispatcher to take the place of Johnson while he was ill. A telegraph operator merely, without further training in a train disptacher's office, is incompetent to perform the duties of train dispatcher. Of the six operators employed in the office at Ogden at the time in question, all had been continuously employed from 15 months to 8 years, and during a period of 7 years immediately preceding the trial below but two occasions had arisen where dispatchers unexpectedly failed to report for duty.

The statute under which the United States claims a liability is established against the Company by the foregoing facts, is found in the first proviso of section 2, chapter 2939, 34 Stat. 1415. So far as material, it reads as follows:

"That it shall be unlawful for any common carrier, * * * to require or permit any * * * operator, train dispatcher, or other employé who by the use of telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements * * * to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in * * * stations continuously operated night and day, * * * except in case of emergency when the employés named * * * may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week."

[1] Applying the law to the facts, the question arises: Did the illness of Johnson, coupled with the inability of the Company to obtain a man to take his place during the time he was ill, constitute an emergency within the meaning of the statute, so as to relieve the Company from the penalties which would otherwise result from requiring Hoover, Sewall, Small, and Miller to remain on duty for a longer period than 9 hours in a 24-hour period?

It does not appear that Congress used the word "emergency" in any other than its ordinary or popular sense. Webster defines the word "emergency" as:

"Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency."

The Century Dictionary defines the word as follows:

"Sudden or unexpected happening; an unforeseen occurrence or condition."

The definition as given by the Century Dictionary was approved in Sheehan v. City of New York, 37 Misc. Rep. 432, 75 N. Y. Supp. 802.

In support of the contention of the United States, the following cases are cited: United States v. Kansas City Southern, 202 Fed. 828, 121 C. C. A. 136; B. & O. R. R. v. I. C. C., 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878; Ellis v. United States, 206 U. S. 257, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589; United States v. Garbish, 222 U. S. 261, 32 Sup. Ct. 77, 56 L. Ed. 190.

[2] The case first cited was an action under the first clause of section 2 of the law now under consideration. This court in that case simply held that all the usual causes of delay incident to the operation of trains, standing alone, would not excuse the railroad company under the terms of the first proviso of section 3, but that the company must further show that such delays could not have been foreseen and prevented by the high degree of diligence demanded. Of course this must be so. If the usual causes of delay incident to operation were to excuse, then the statute would be wholly ineffective to accomplish its purpose.

B. & O. R. R. v. I. C. C. is a case in which the Supreme Court held that the law in question was a constitutional exercise of the power of Congress.

Ellis v. United States is a case where the Supreme Court decided that the disappointment of a contractor with regard to obtaining some of his materials did not create an extraordinary emergency, within the meaning of Act Aug. 1, 1892, c. 352, 27 Stat. 340 (U. S. Comp. St. 1901, p. 2521). In disposing of this particular question, the court said:

"He found more difficulty than he expected, although he expected some trouble, in getting certain oak and pine piles called for by the contract, and, having been delayed by that cause, he permitted his associate in the business to employ men for 9 hours, in the hurry to get the work done. The judge instructed the jury that the evidence did not show an 'extraordinary emergency' within the meaning of the act. The judge was right in ruling upon the matter. Even if, as in other instances, a nice case might be left to the jury, what emergencies are within the statute is merely a constituent element of a question of law, since the determination of that element determines the extent of the statutory prohibition and is material only to that end."

United States v. Garbish is a case wherein under the act last cited the Supreme Court held that the extraordinary emergency which excuses is not one that is contemplated and inheres necessarily in the work. In so deciding the court said:

"And, besides, the extraordinary emergency which relieves from the act is not one that is contemplated and inheres necessarily in the work. United States v. Sheridan-Kirk Contract Co. [D. C.] 149 Fed. 809. It is a special occurrence, and the phrase used emphasizes this. It is not an emergency simply which is expressed by it, something merely sudden and unexpected, but an extraordinary one, one exceeding the common degree."

It is manifest that none of the cases cited decides the question at issue in the present case. The law now being considered does not require an extraordinary emergency, but simply an emergency. And we think the facts as they appear in the record warranted the court in deciding that an emergency, within the means of the statute, existed. As was said in the Ellis Case, supra:

"What emergencies are within the statute is merely a constituent element of a question of law, since the determination of that element determines the extent of the statutory prohibition and is material only to that end."

It is claimed by counsel for the United States, however, that the Company should have had extra train dispatchers, under pay, ready to take the place of Johnson when he became ill. The law recognizes the fact that emergencies may arise. Congress, no doubt, used the word "emergency" with reference to the business of dispatching trains when conducted in the exercise of the ordinary care required in such business. If Congress had intended that the railroads should provide against all emergencies, then there was no use in granting to the Company the right to require longer hours in the case of emergency. If we decide that it was the duty of the Company to keep extra train dispatchers under pay to take the place of those who became suddenly ill, how many should it have kept in the present case—one or six? And as the extra dispatcher or dispatchers might also have become ill, should not the Company also provide for that contingency? Speaking generally, sickness and death are the common lot of all and must be expected; but, within the expectancy of life, health and not sickness is the general rule. In view of the showing that for a period of 7 years only one other unexpected absence of an employé on account of illness or other cause had occurred, we think the Company was not so negligent in not having an extra dispatcher on hand to take Johnson's place, as to deprive it of the privilege granted by the law. No question is made as to the necessity of the performance of the work required of the employés mentioned. We do not think the chief train dispatcher was required under the circumstances to perform the work of Johnson, as that would have left the business of the office without superintendence or supervision.

[3] We also think that the word "week" in the statute was intended to mean a period of 7 days, and not necessarily a calendar week, and that the statute is not violated if no employé worked over time more than 3 days out of 7.

We do not decide that sudden illness in all cases or standing alone would constitute an emergency. Each case must depend upon its own facts. Sudden illness might continue for such a number of days as to cease to be an emergency. Under our ruling in the Kansas City Southern Case, supra, to the effect that the statute in question, being highly remedial, should be liberally construed so that its purposes may be effected, we think the illness of Johnson, coupled with the inability of the Company to secure other help during the time he was sick, constituted an emergency within the meaning of the law.

Judgment affirmed.