### UNITED STATES v. CHICAGO & N. W. RY. CO.

#### (District Court, W. D. Michigan, N. D. October 30, 1914.)

1. MASTER AND SERVANT ⊕⟶13—RAILROADS—HOURS OF SERVICE LAW—REGULATION—"ON DUTY."

Where a railroad operator was always subject to call whenever his services were required, both during meal hours and at other times, he was "on duty," so that the periods allowed him by the railroad company for meals and other purposes did not interrupt the continuity of his service, within the Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, § 8677]).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊕⟶13.

For other definitions, see Words and Phrases, Second Series, On Duty.]

2. MASTER AND SERVANT ⊕⟶13—RAILROADS—HOURS OF SERVICE LAW—DELAY OF TRAINS—"EMERGENCY."

Delays in the departure of trains caused by the lateness of other trains on connecting lines do not constitute an "emergency" within the Hours of Service Law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊕⟶13.

For other definitions, see Words and Phrases, First and Second Series, Emergency.]

3. MASTER AND SERVANT ⊕⟶13—RAILROADS—HOURS OF SERVICE LAW—ACCIDENTS.

Delay of the departure of a circus train which circumstances required should be loaded on the main line, due to the act of the circus company's intoxicated employés in running a wagon off a flat car, was an ordinary accident which furnished neither justification nor excuse for a violation of the Hours of Service Law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊕⟶13.]

Suit by the United States of America against the Chicago & Northwestern Railway Company to recover penalties for violation of the Hours of Service Law. Judgment for plaintiff.

---

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Myron H. Walker, Dist. Atty., of Grand Rapids, Mich., and Walter U. Brown, of Washington, D. C., for plaintiff.

Frank A. Bell, of Negaunee, Mich., for defendant.

SESSIONS, District Judge. This is a suit to recover penalties for violations of the Hours of Service Act of March 4, 1907, in keeping telegraph operators on duty for more than 13 hours during periods of 24 hours. The complaint or declaration contains 24 counts, in each of which a separate and distinct violation is alleged. The defendant confesses liability under 14 of the counts, but denies liability under the other 10 counts. The decision of the case in each of 8 counts hinges upon the question of whether or not the time for meals of the operator should be deducted from the hours of his service. The stipulated facts in this regard are as follows:

"As to counts 2, 3, 7, 9, 10, 11, 12, and 13 the employés in each instance were off duty for dinner or supper or both for full regular periods of one hour for each meal sufficient to reduce the period of service to less than 13 hours. And as to these counts it is agreed that the testimony shows that the employé always has a full hour off duty for dinner and also for supper as a uniform and regular practice; that they have no definite recollection as to the particular days in question; that if during a meal hour an unexpected train should arrive at their station they would give it the necessary attention and complete their meal hour after doing so as a common practice; that they were paid for the full amount of overtime charged; and also for their regular service."

[1] From these facts, it is apparent that the operator was always subject to call whenever his services were required, both during meal hours and at other times. It is well settled that, within the meaning of the Hours of Service Act, brief periods allowed for meals and other purposes do not interrupt the continuity of service. Under the circumstances here shown, it must be held that the operator was on duty during the time he was taking his meals. United States v. Chicago, M. & P. S. Ry. Co. (D. C.) 197 Fed. 624-627; M., K. & T. Ry. Co. v. United States, 231 U. S 112-119, 34 Sup. Ct. 26, 58 L. Ed. 144; United States v. Northern Pac. Ry. Co. (D. C.) 213 Fed. 539.

[2] The defense to the causes of action alleged in the remaining two counts (21 and 22) is that, in each case, an emergency existed which excused and justified the excessive time of service. As to count 21, the alleged emergency is thus described in the stipulation of facts:

"A regular passenger train, through from Calumet, Mich., to Chicago, Ill., over the Duluth, South Shore & Atlantic Railway and Chicago & Northwestern, due to be delivered to the Chicago & Northwestern Railway at Ishpeming, Mich., at 6:15, and due out of Ishpeming at 6:30 p. m., was not delivered to the Chicago & Northwestern so that it could leave there until 10 o'clock p. m.: that on its departure the employé went at once off duty; that the operator knew about 5 o'clock p. m. that the train was late; that Ishpeming is a daytime station, and there are no other operators there in the employ of the defendant."

Delays in the arrival and departure of trains are of frequent occurrence and are usual incidents in the ordinary operation of railroads. The fact that the defendant received the through train in question from another railroad is of no consequence. Delays in the departure

of trains caused by trains upon connecting lines being late are common. Such delays do not constitute an emergency within the meaning of the law. United States v. Kansas City Southern Ry. Co., 202 Fed. 828-833, 834, 121 C. C. A. 136; United States v. Kansas City Southern Ry. Co. (D. C.) 189 Fed. 471–478.

[3] The facts, as stipulated, with reference to the overtime service charged in count 22, are these:

"A carnival company was loading its stuff in Norway for removal to Green Bay, Wis. Some of its employés were intoxicated and ran a wagon off a flat car which caused a long delay in the train's departure. On account of physical conditions, this train was of necessity loaded on one of the main lines, and it was necessary to clear said line as soon as possible. The assistant superintendent was on the ground and directed the employé to stay as he did to assist in getting orders for that train. The carnival company had been in Norway several days and was due to leave there at 9 o'clock of the night of Sunday, the 21st. The regular assigned hours for which the employé was regularly paid, including meal hours, were from 7 a. m. to 7 p. m. and the employé was paid overtime from 7 to 12 p. m."

It thus appears that the accident which caused the delay in the departure of the circus train occurred a considerable time before the expiration of the period during which the operator might lawfully have worked. He had been continuously on duty since 7 o'clock in the morning, and the train was not due to leave until 9 o'clock at night. There is no showing that another operator could not have been procured. Accidents of this character often happen and are to be expected. They furnish neither justification nor excuse for a violation of a remedial statute like the one under consideration. United States v. Southern Pac. Ry. Co., 209 Fed. 562, 126 C. C. A. 384.

Judgment will be entered in favor of the plaintiff and against the defendant for the sum of $100 upon each count of the declaration. Plaintiff will recover costs of suit to be taxed.