CHICAGO & N. W. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916. Rehearing Denied June 1, 1916.)

No. 2294.

1. CARRIERS ☞37—CARRIAGE OF LIVE STOCK—TWENTY-EIGHT HOUR LAW— VIOLATION.

Under the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [Comp. St. 1913, §§ 8651–8654]), declaring that no carrier shall confine cattle or other animals in cars for more than 28 hours without unloading for rest, water, and feeding, but that the shipper may consent to the time of confinement being extended to 36 hours, the penalty provided for violation may be recovered, though confinement beyond the 36-hour period, which was consented to by the shipper, was not willful or with intent to do injury to the stock.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☞37.]

2. CARRIERS ☞37—CARRIAGE OF LIVE STOCK—VIOLATION OF TWENTY-EIGHT HOUR LAW.

In an action to recover the penalty imposed by the Twenty-Eight Hour Law, where a carrier keeps cattle confined longer than the maximum period of 36 hours, unless necessitated by storm or accident, it is no defense that an accident occurred on the last part of the journey, where, despite such accident, the shipment might have arrived in less than 36 hours, had diligence been exercised.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☞37.]

3. CARRIERS ☞37 — CARRIAGE OF LIVE STOCK — ACTIONS — TWENTY-EIGHT HOUR LAW—EVIDENCE—SUFFICIENCY.

In an action to recover the penalty imposed by the Twenty-Eight Hour Law for keeping cattle confined longer than 36 hours, evidence that the confinement was occasioned by the carrier's negligence *held* sufficient to go to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☞37.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the United States against the Chicago & Northwestern Railway Company to recover a penalty for violation of the Twenty-Eight Hour Law. There was a judgment for the United States, and defendant brings error. Affirmed.

The action was for violation of the "Twenty-Eight Hour Law." It appears that the stock was loaded October 4th at 6 p. m. at Ringsted, Iowa, a station on defendant's road, and conveyed by defendant over its road to the stockyards at Chicago, where it was unloaded at 9:05 a. m. of the 6th, having been confined in the car continuously for 39 hours and 5 minutes. The shipper agreed to 36 hours' confinement. The car containing the stock was one of an extra train carrying stock only. Defendant gave evidence that the train reached Clinton, Iowa, which station it left at 6:30 p. m. of the 5th, for Chicago; that at Nelson, Ill., there were picked up and put into this train 5 cars of stock, which had been left there by a prior train, because it was found to be too heavy. The schedule running time from Clinton to Chicago was 9 hours, but it had been done in 6 hours. The train reached Proviso, a station just outside of the city limits of Chicago, and 16 miles from place of unloading, at 2:48 a. m. of the 6th, and while running through this station a

drawbar was pulled out of car No. 21239, which was the fifth car from the engine, and one of those picked up at Nelson, and one of the timbers which held the drawbar, falling upon the rails, caused derailment of the car following. It was necessary to send for a wrecker to re-rail the car. The wrecker was at Palatine, all ready with its crew to start on such emergencies. Notice of this derailment was received by the foreman of the wrecking crew at 4 a. m. He immediately started for Proviso, reaching there at 5:05 a. m. The track was cleared at 5:35 and the train proceeded on its course at 5:40. This conductor left the train at Fortieth avenue at 6:30 or 6:40, and it was there taken in charge by another of defendant's conductors, and started for the stockyards. After going about 5 miles and reaching Brighton Park, which is about 2 miles from the stockyards, an air hose on one of the cars burst, causing a sudden setting of the brakes, and the pulling out of a drawbar on another car of the train. This necessitated the setting out of that car, and replacing the air hose, causing further delay of 28 minutes.

Various witnesses testified to having examined car No. 21239 prior to the pulling out of the drawbar, and that they observed nothing to indicate that the drawbar was defective. At the conclusion of the evidence for the government, and again at the close of all the evidence, defendant moved the court to instruct the jury to find a verdict for the defendant, which motion the court denied. In the court's charge to the jury it was stated that the jury had a right to consider the movement of the train from the point where the stock was received to the Chicago stockyards, in determining whether the defendant exercised due diligence to transport the stock within the 36 hours; that the company may not lay out a slow schedule over a long distance, depending upon its ability, toward the end of the journey, to run in the stock within the 36-hour limit. To these portions of the court's charge defendant took exception. The jury returned a verdict against defendant, and judgment was entered and fine imposed. It is stated in the record and in briefs of counsel that seven other suits are pending against the defendant in the District Court, depending upon these same facts, and which by stipulation between the parties are to be disposed of in like manner as the case at bar.

Charles A. Vilas, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Frederick Dickinson, both of Chicago, Ill., for the United States.

Before MACK and ALSCHULER, Circuit Judges, and ANDERSON, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] It is contended for plaintiff in error that the record herein discloses no evidence which would warrant the conclusion that plaintiff in error "willfully" violated the Twenty-Eight Hour Law. That the term "willfully," as employed in the act, does not imply deliberate intent to do injury to the stock or to its owner, has been too frequently considered and definitely determined to require further demonstration. The jury may conclude that the violation was willful, if from the evidence they find that the carrier in confining the stock beyond the statutory limit, manifested disregard of the law, or indifference toward its requirements. Newport News, etc., Co. v. United States, 61 Fed. 488, 9 C. C. A. 579; N. Y. Cent. R. R. Co. v. United States, 165 Fed. 833, 91 C. C. A. 519; United States v. A., T. & S. Ry. Co. et al. (D. C.) 166 Fed. 160; United States v. U. P. R. R. Co., 169 Fed. 65, 94 C. C. A. 433; United States v. Atlantic Coast Line R. R. Co., 173 Fed. 764, 98 C. C. A. 110; C., B. & Q. R. R. Co. v. United States, 194 Fed. 342, 114 C. C. A. 334; O-W. R. & Nav. Co. v. United States, 205 Fed. 337,

123 C. C. A. 471; St Louis, etc., Ry. Co. v. United States, 209 Fed. 600, 126 C. C. A. 422; Grand Trunk Ry. Co. v. United States, 229 Fed. 116, —— C. C. A. ——.

[2] It was stipulated by the company that the overtime of confinement of this stock was 3 hours and 5 minutes. It seems to be the theory of the plaintiff in error that, if it appears that unavoidable accident delayed the train in its' course for a period of time at least as long as the 3 hours and 5 minutes, a complete defense will have been made, and that it was error for the court to charge the jury it may take into consideration the whole period of confinement, in determining whether any of the excess over 36 hours was in violation of the statute, and whether, in the exercise of due diligence by the carrier, the confinement should have terminated earlier than it did.

It is claimed that a delay of 2 hours 52 minutes unavoidably occurred at Proviso through a pulled drawbar, and consequent derailment of a car, and another of 28 minutes at Brighton Park through a bursting air hose and resultant pulling out of another drawbar—making 3 hours 20 minutes of unavoidable delay, but for which the stock presumably would have been unloaded 15 minutes before the expiration of the 36 hours.

The statute prohibits the carrier from confining the stock beyond the period fixed, without unloading into pens, etc., "unless prevented by storm or other accidents or unavoidable cause which cannot be anticipated or avoided by the exercise of due diligence and foresight." If the unloading is so prevented, the delay is excused; but if, notwithstanding unanticipated and unavoidable delays, the carrier ought nevertheless in the exercise of reasonable diligence to have unloaded the stock within the prescribed time, the delay will not relieve it from liability for confinement beyond that time. Delay in transportation may or may not necessarily delay the time of unloading, depending upon the facts of each case. Suppose an instance where, the shipper having consented to 36 hours' confinement, the time reasonably required to convey the stock from origin of shipment to unloading point was 10 hours, and that an excusable delay of 16 hours occurs in transportation; would this excuse the carrier in prolonging the confinement of the stock beyond the 36 hours? Plainly not, if in the exercise of due diligence the confinement, notwithstanding the delay, should not have exceeded 36 hours. In other words, since there were still 20 hours of the 36 in which to do what reasonably required but 10, the overtime of confinement would not be attributable to the delay in transportation. And surely the delay of 16 hours in the transportation would not in and of itself give the carrier the right arbitrarily to prolong the confinement from the original 36 to 52 hours, wholly regardless of the time reasonably necessary to reach an unloading point, without incurring the penalty of the statute, if the confinement is willfully and knowingly extended beyond 36, though within 52, hours.

So in the instant case, if conceding 3 hours 20 minutes of excusable delay at Proviso and Brighton Park, the jury nevertheless found from the evidence that the confinement of the stock in question ought not, in the exercise of due diligence by the carrier, to have exceeded the

36 hours, or, if exceeding 36, ought not to have been as long as 39 hours 5 minutes, its verdict would in that regard be justified. In considering the question of whether all or any of the overtime of confinement was made necessary by the proved delays, and whether in the exercise of due diligence the carrier could have brought the stock to the unloading point in materially less than the time here in question, it was entirely proper for the jury to consider the confinement and transportation of this stock from inception to unloading, and this only is what the court's charge, which is complained of, told the jury it might do. There was no error in this.

[3] Was there any evidence from which the jury might reasonably have concluded that in the exercise of due diligence the carrier should have unloaded the stock within the 36 hours, or in any event within a period substantially less than the 39 hours of their confinement? In brief for plaintiff in error it is said:

"The train was in Proviso, 136 miles distant, at 2:48 in the morning, or 8 hours and 43 minutes after leaving Clinton, having traversed that distance at an average speed of 15.7 miles per hour. At that point, but a very few miles from the stockyards, they therefore had 4 full hours left."

But the stock was not unloaded till 9:05—6 hours 17 minutes after reaching Proviso, 16 miles away. Deducting 3 hours 20 minutes for the delays at Proviso and Brighton Park leaves 2 hours 57 minutes clear running time, which was consumed to make 16 miles, with a train carrying stock which had then already been confined 36 hours or more. The purpose of the law being, as declared in the act, "to prevent cruelty to animals while in transit," humanitarian considerations would suggest that, as the maximum period of confinement is approaching or passed, reasonable diligence on the carrier's part will require corresponding increase of effort to minimize further duration of the confinement.

The jury may have concluded that, conceding the delay of 3 hours 20 minutes as claimed, the consuming of 2 hours 57 minutes for a 16-mile run with stock which had already been confined by the same carrier since 6 o'clock p. m., of the second day before, manifested such a disregard for the statute as to afford sufficient evidence of its willful violation. We cannot say that a verdict so based would be without evidence to support it, or a judgment given on such a verdict contrary to law. And indeed the jury might from the evidence have concluded that yet another hour was wasted at Proviso, at which station at 2:48 a. m., the car in the train was derailed. The wrecker was at Palatine with its crew ready to go out on any such emergency. But the foreman of the crew testified that he did not get notice till 4, that he started at once, reached Proviso at 5:05, cleared the track at 5:30, so that at 5:40 the train proceeded. In these days of lightning communication, the jury might not improperly have found that under the circumstances ordinary care did not admit of such delay in calling the wrecker, and that such hour or so of the delay at Proviso was neither necessary nor unavoidable.

We find no error in this record, and the judgment of the District Court is affirmed.