UNITED STATES v. DELANO et al.

(Circuit Court of Appeals, Seventh Circuit.   October 2, 1917.)

No. 2424.

1. MASTER AND SERVANT ⬤⟞13—HOURS OF SERVICE ACT—CONSTRUCTION.
   The proviso of Hours of Service Act March 4, 1907, c. 2939, § 3, 34 Stat. 1416 (Comp. St. 1916, § 8679), declaring that its provisions shall not apply in case of casualty or unavoidable accident, or act of God, extends to all employés, including telegraph operators or train dispatchers, whose hours are prescribed and affected by the act.

2. MASTER AND SERVANT ⬤⟞13—HOURS OF SERVICE ACT—OPERATION OF RAILROAD.
   Hours of Service Act, § 2 (Comp. St. 1916, § 8678), declares that it shall be unlawful for any common carrier to permit or require any operator, train dispatcher, or other employé who by the use of telegraph or telephone dispatches delivers orders affecting train movements, to be or remain on duty for longer than 9 hours in all offices and stations continuously operating, nor for longer than 13 hours in offices and stations, etc., operated only in the daytime, except in case of emergency, when the employés may be permitted to remain on duty for 4 additional hours. A railroad company maintained a night and day telegraph station at a small village, employing three operators; each operator working eight hours. On her way to work to relieve an operator who had been on duty nearly eight hours, one of the operators became violently ill and fainted, and was unable to discharge her duty; the one then on duty remaining. He then communicated with the chief operator, who sent a relief operator, who could not arrive, if the trains were on schedule, until after such operator had been on duty for 15 hours continuously. The third operator, though within 10 minutes' walk of the station, was not called to relieve the operator then on duty, who remained on duty for more than 15 hours. Held that, as such operator was kept on duty 15 hours, the carrier could not escape under the proviso in section 2, if the sudden sickness of the operator coming on duty was an emergency.

---

3. MASTER AND SERVANT ⊂⊃13—OPERATION OF RAILROAD—HOURS OF SERVICE ACT—OPERATION.

In such case, if the sickness of the operator coming on duty be treated as an unavoidable casualty, within Hours of Service Act, § 3, relieving the carrier from penalties where *violations* occur because of casualty or unavoidable accident, or act of God, the carrier cannot escape, for it might have called the third operator, instead of keeping the one then on duty continuously in service until the arrival of the relief operator, and in that way avoided exceeding the 13-hour limit prescribed by section 2.

4. MASTER AND SERVANT ⊂⊃13—OPERATION OF RAILROAD—HOURS OF SERVICE ACT—OPERATION.

For a railroad company to excuse a violation of the Hours of Service Act on the ground that it resulted from a casualty or act of God, within the exception prescribed by section 3, it must appear that the company, after the casualty became known, exercised a high degree of diligence to avoid violation.

In Error to the District Court of the United States for the District of Indiana.

Action by the United States against Frederick Delano and others, receivers of the Wabash Railroad Company. There was a judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

L. Ert Slack, of Indianapolis, Ind., and Philip J. Doherty, of Washington, D. C., for the United States.

Allison E. Stuart, of La Fayette, Ind., for defendants in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. This action is brought by the government to enforce the Hours of Service Act, enacted March 4, 1907, entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon" (sections 8678, 8679, U. S. Comp. Stat. 1916), and was tried by the court without a jury upon stipulation of the parties and upon an agreed statement of facts. The material facts agreed upon are as follows:

Defendant on June 18, 1913, maintained a night and day telegraph station at Ashley-Hudson, Ind., a small village, and employed three operators, Edson, Shepard, and Butler; the former going on duty at 1 p. m., and each operator working eight hours. On this day Operator Shepard, while on her way to work at about 8:30 p. m., became "violently ill and fainted," and "thereby became and was unable to assume and discharge her duties as such operator." Edson continued his service, and notified the chief operator at Montpelier, Ohio, at 9:30 p. m. of the illness of Shepard. There were no relief operators obtainable at Ashley-Hudson, but Operator Butler lived within 10 minutes' walk of the station. He was not called to relieve Edson.

The nearest relief operator was one Smith, located and employed at the city of Montpelier, Ohio. Immediately upon receiving notice of Shepard's illness, the chief dispatcher sent Smith to Ashley-Hudson on the first available train, which left at 2 a. m. on June 19th, and

arrived at Ashley-Hudson at 4 a. m. Smith assumed his duties immediately upon his arrival.

Two questions are submitted: (a) Does the proviso of section 3 of this act relate to telegraph operators? (b) If so, does the evidence establish a defense under the emergency clause of section 2, or the casualty or unavoidable accident proviso of section 3?

[1] The government's contention that the proviso of section 3 does not apply to telegraph operators or train dispatchers must be overruled upon the authority of United States v. Missouri Pacific R. R., 213 Fed. 169, 130 C. C. A. 5; San Pedro, L. A. & S. L. R. R. v. United States, 220 Fed. 737, 136 C. C. A. 343; United States v. Atlantic Coast Line Co. (D. C.) 224 Fed. 160; United States v. N. Y., O. & W. Ry. (D. C.) 216 Fed. 702. We think it was the intention of Congress to make the proviso appearing in section 3 of the act apply to all employés affected by the act.

[2-4] But defendant's contention that the evidence fully justified the excess service on the part of Edson cannot be accepted. Whether we deem the sudden illness of the operator as "a case of emergency," within the proviso of section 2, or "a case of casualty, unavoidable accident or the act of God," within the provision of section 3, the result must be the same. If the sickness was such "an emergency" as is specified in the proviso of section 2, still the carrier is not excused in the present case, for the operator was kept on duty 15 continuous hours, or 2 hours more than the maximum period allowed in "a case of emergency" by section 2.

If it be admitted that the sudden and unexpected illness of Operator Shepard was "a casualty," within the language of the proviso in section 3, then it appears in this case that the carrier failed to exercise that high degree of diligence required of it under such circumstances. The degree of diligence required of the carrier under such circumstances has been announced in the following cases: Atchison, Topeka & S. F. R. R. Co. v. United States, 220 Fed. 748, 136 C. C. A. 354; San Pedro, L. A. & S. L. R. R. v. United States, 220 Fed. 737, 136 C. C. A. 343; United States v. Atchison, Topeka & S. F. R. R. Co. (D. C.) 236 Fed. 154; Northern Pacific R. R. v. United States, 213 Fed. 577, 130 C. C. A. 157; Chicago & N. W. R. R. v. United States, 234 Fed. 268, 148 C. C. A. 170; Baltimore & Ohio R. R. v. United States, 242 Fed. 1, —— C. C. A. ——. See, also, Indiana Harbor Belt Ry. v. United States, 244 Fed. 943, —— C. C. A. ——, decided by this court July 24, 1917.

In the present case the carrier knew that the relief operator, Smith, could not reach Ashley-Hudson until 4 a. m., or until after Edson had been on continuous duty for 15 hours. Any delay in the train service would have increased this period. On the other hand, Operator Butler was within 10 minutes' walk of the station and was available for the relief of Edson. He could have gone on duty at 12 o'clock, and his service thereafter, until Smith arrived, or even for a longer period, would not have been violative of the statute, and would have been consistent with the purpose and object of the act, which was to secure greater safety to passengers and employés through the shortening of

the continuous hours of service of railway employés. Upon the stipulated statement of facts we conclude the carrier failed to establish diligence in not calling Butler after it learned of the sickness of Shepard.

Judgment is reversed, and the cause remanded to the District Court, with directions to enter judgment in plaintiff's favor.