## UNITED STATES v. ATLANTIC COAST LINE R. CO.

### No. 5393.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1946.

Henry H. Edens, Asst. U. S. Atty., of Columbia, S. C., and Leo Meltzer, Atty., Department of Justice, of Washington, D. C. (Theron L. Caudle, Asst. Atty. Gen., Claud N. Sapp, U. S. Atty., of Columbia, S. C., and James O. Tolbert, Sp. Asst. to U. S. Atty., of Washington, D. C., on the brief), for appellant.

Douglas McKay, of Columbia, S. C. (Thomas W. Davis, of Wilmington, N. C., and Douglas McKay, Jr., of Columbia, S. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

HAYES, District Judge.

The United States brought this action against the defendant to recover penalties under the Hours of Service Act, 45 U.S. C.A. §§ 61–64, alleging sixty separate violations during the period of December 1 to 30, 1943, inclusive, for permitting two telegraphers to work 12 hours each on each day during that period.

The trial court found that an emergency existed during that period which permitted each employee to work twelve hours in a twenty-four hour period on three days each week of the emergency, without incurring a penalty. Accordingly the court allowed penalties for fifteen violations as to each employee, and denied recovery on fifteen counts relating to each employee. From the judgment denying recovery on the thirty counts, the United States appealed. Here the appellant contends that the evidence does not warrant the finding of an emergency nor the exercise of diligence on the part of appellee to avoid the penalty.

The facts giving rise to this action are set forth in the opinion of the trial judge. Briefly stated, the defendant employs three telegraphers on 8 hour shifts for continuous service at Robbins, S. C. This is a mere junction of two railroads over which thirty trains pass daily. It is located in the

edge of a Savannah River swamp. There are no houses of any kind and the employees live in box cars. From December 1 to 30, the defendant worked two men twelve hours each day of twenty-four hours because of its inability to secure a third man.

The Government contends each day each employee worked more than nine hours in any twenty-four period constitutes a violation of the Act for which it is entitled to a penalty. The pertinent provisions of the Act are printed below.*

The defendant contended in the trial court that the conditions prevailing at Robbins during December, 1943, amounted to a "casualty" which rendered the limitation of hours of service inapplicable. However, it did not appeal from the judgment allowing recovery on thirty counts. But it contends that the trial court should be sustained in its finding that an emergency existed throughout December, 1943, thus permitting an employee to work twelve hours per day of twenty-four hours on three days each week, without incurring a penalty.

Section 62 limits the hours of service of railroad employees generally but the proviso cited in the foot note specifically deals with telegraphers and dispatchers. The reason for the proviso seems to arise on account of limiting the hours of their employment to a shorter period than other employees. Telegraphers are limited to nine hours per day of twenty-four hours in places of continuous service, except in case of emergency, when such employees may be permitted to remain on duty four additional hours in a twenty-four hour period on not exceeding three days in any week. In this connection it is significant to note that other employees are limited to sixteen hours of continuous service with a rest period of ten hours or in cases of an aggregate of sixteen hours of service in a twenty-four hour period such employee must have a rest period of eight hours.

The penalties for violating the provisions of the Act are stated in section 63 with this proviso: "Provided, That the provisions of sections 61–64 of this title shall not apply in any case of casualty or unavoidable accident or the act of God."

■ It is plain that the words "emergency," "casualty," "unavoidable accident" and "the act of God" are not synonymous. All prohibitions and consequent penalties are excused if due to casualty or unavoidable accident or the act of God. An "emergency," as used in this Act, affords some elasticity by permitting the employee to work four additional hours in a twenty-four hour period on not exceeding three days in any week. The other employees who have worked sixteen continuous hours in twenty-four hours after resting ten hours, may again work another sixteen continuous hours. Thus during this forty-two hour period from the beginning of his day an intervening rest period of ten hours applies. In like manner a telegrapher in any week during an emergency shall not be permitted to work more than twelve hours in excess

---

* "1. Section 62. * * *. Provided, That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the day time, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty four additional hours in a twenty-four-hour period on not exceeding three days in any week. * * *"

"2. Section 63. * * * Any such common carrier, or any officer or agent thereof, requiring or permitting any employee to go, be, or remain on duty in violation of the next preceding section of this chapter shall be liable to a penalty of not less than $100 nor more than $500 for each and every violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violations shall have been committed; and it shall be the duty of such district attorney to bring such suit upon satisfactory information being lodged with him; but no such suit shall be brought after the expiration of one year from the date of such violation; * * * Provided, That the provisions of this chapter shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employee at the time said employee left a terminal, and which could not have been foreseen. * * *"

of the hours limited during normal conditions. If we give force and effect to all of the provisions of the Act, which it is our duty to do, unless hopelessly irreconcilable, it is plain that an emergency as used in the Act is an emergency which should be recognized as a condition less excusable than either of its terms, "casualty" or "unavoidable accident" or "act of God." Undoubtedly an emergency could exist without falling under the definition of "casualty" or "unavoidable accident" or "the act of God."

During the "emergency" the hours are limited to nine each twenty-four hours except on three days of the work week the employee is permitted to work thirteen hours per day. The additional working hours are permitted on account of the existence of an emergency. The penalties do not attach unless these limitations are exceeded and if these hours are exceeded on account of casualty or unavoidable accident or an act of God the penalties do not attach.

█ The primary purpose of the Act it to limit the hours an employee may be permitted to work. Compliance by the employer is required. Heavy penalties are exacted for non-compliance. They are excused altogether if caused by casualty or unavoidable accident or the act of God. They do not attach in cases of emergency if the employee does not work more than four additional hours in a twenty-four hour period or not exceeding three days in any week. In all situations the employer must use diligence to observe the hours of service prescribed by the Act. Atchison, T. & S. F. Ry. Co. v. United States, 244 U.S. 336, 343, 37 S.Ct. 635, 61 L.Ed. 1175.

█ An emergency, as used here, is an unusual or abnormal condition beyond the control of the employer and a condition beyond his reasonable power to remove or overcome. It may arise from causes other than casualty or unavoidable accident or act of God. The employer can not cause the emergency and claim protection under it. He must exercise diligence to comply with the Act even in emergencies. The law is intended to protect the employee, the employer and the public and to this end must be liberally construed. United States v. B. & O. Ry. Co., 4 Cir., 133 F.2d 831.

█ Telegraph operators or dispatchers such as had to be used here were specially trained men, they were not common or unskilled laborers. There was a severe short-age of such persons due to the enormous increase in rail traffic and the increased demand for men in the prosecution of the war. We do not hold that any war constitutes an emergency, nor that this war created an emergency in all situations. But one must blind his eyes to actual facts if he does not recognize that this war created an abnormal and unforeseeable labor situation. The Selective Service Act, 50 U.S. C.A. Appendix § 301 et seq., was the instrumentality by which our government supplied the personnel for its armed forces. The steady flow of men from farms and factories and all walks of life into armed services and munitions plants created a scarcity of labor never before approached in our country's history. Congress enacted legislation and clothed the President with unparalleled powers to marshal the man and woman power of this country and to channel it where the exigencies of the war and its successful prosecution required. Priorities on commodities and prohibitions against changing occupations or employment prevailed. We are of the opinion, that under the facts disclosed in the record here, an emergency within the meaning of the Act existed during December, 1943.

The learned judge found that appellee made diligent efforts to procure an additional operator at Robbins; it offered the job to a number of telegraphers who refused it, it advertised in various ways for operators and was unable to secure one for Robbins, S. C. Robbins is in the Columbia district and the Northern division of the appellee; during December, 1943, there was a shortage of seven telegraphers in the Columbia district and a shortage of twenty-nine in the division; a shortage of ten in the contiguous Charleston district; and a shortage of manpower on its entire system of 2,200; it takes nine months for one to learn the Morse Code essential in this job and additional time and experience to transmit messages intelligently. Appellee called District Chief Dispatchers at Rocky Mount, N. C., Charleston, S. C., Norfolk, Va., and Wilmington, N. C., the Chief Dispatcher of the Southern at Columbia; wrote the Southern Central of Georgia, Louisville and Nashville, and did everything in the power of Supt. Hare and Chief Dispatcher Taylor to remedy the situation, without success. These findings of fact are amply supported by the evidence. On these facts we hold with the trial judge that appellee was diligent and used reason-

able efforts to comply with the statute and was authorized to work its employees the maximum hours permitted in an emergency.

Judge Connor in United States v. Atlantic Coast Lines Co., 4 Cir., 224 F. 160, deals at length with the decisions and concludes that "emergency" is not synonymous with "unavoidable accident," "casualty" or "an act of God." Undoubtedly the term emergency is available under conditions which do not fall within the terms "unavoidable accident," "casualty" or "act of God."

■ The contention that an emergency could never last longer than one week within the meaning of the Act seems unreasonable. Such a construction would substitute judicial interpretation of the word "one" week for the legislative word "any" week. If we are correct in holding with the district judge that an emergency existed during the first week of December, it follows that the emergency continued throughout the month of December. The same evidence supports and justifies the emergency in both instances. Obviously an emergency under ordinary circumstances is temporary but its duration is dependent upon the facts of each case. Here the emergency most assuredly continued throughout the month of December, 1943.

Affirmed.