UNITED STATES of America, Plaintiff,

v.

The CENTRAL RAILROAD COMPANY OF NEW JERSEY, Defendant.

Civ. A. No. 203-54.

United States District Court, D. New Jersey.

March 31, 1955.

Raymond Del Tufo, Jr., Charles H. Hoens, Jr., Newark, N. J., for plaintiff.

William F. Hanlon, New York City, for defendant.

MEANEY, District Judge.

The United States of America has brought suit, pursuant to the provisions of the Hours of Service Act, 45 U.S.C.A. § 61 et seq., against the Central Railroad of New Jersey, a common carrier engaged in interstate commerce.

Four violations of the Act are alleged in the complaint, and judgment in the sum of $2,000 is asked, $500 for each violation.

The facts of the case are not in dispute, and the following is an agreed statement of facts:

1. It is stipulated and agreed by and between the parties herein by

their respective counsel that the defendant is a common carrier engaged in the transportation of interstate commerce by railroad within the jurisdiction of this Court.

2. At Jersey City, N. J., defendant maintains a continuously operated train-order office, known as Tower "A", the assigned hours being, First Trick, 6:00 a. m. to 2:00 p. m.; Second Trick 2:00 p. m. to 10:00 p. m.; Third Trick, 10:00 p. m. to 6:00 a. m. During May and July, 1953, Israel Spewak was assigned the first trick, F. Hann the second trick, and G. M. Waterhouse the third trick. On May 19 and July 14, 1953, Second Trick Operator F. Hann was instructed to and did work as Train Dispatcher at Jersey City. The three tricks were then divided between First Trick Operator Israel Spewak and Third Trick Operator G. M. Waterhouse. Operator Spewak was required and permitted to be and remain on duty on May 19 and July 14 from 6:00 a. m. to 6:00 p. m., while Operator Waterhouse was required and permitted to be and remain on duty from 6:00 p. m. on those dates until 6:00 a. m. on the following mornings, making the total time on duty for each employee in each instance 12 hours in the twenty-four-hour period.

3. The two employees named in paragraph 2 hereof, namely, Israel Spewak and G. M. Waterhouse, were employed as Assistant Train Directors, and during the times mentioned in paragraph 2, they transmitted, received and delivered by means of the telegraph or telephone, orders pertaining to or affecting the movement of trains engaged in the transportation of interstate commerce.

4. On the dates mentioned herein, defendant had only two employees who were qualified as Train Directors at Tower A, Jersey City, New Jersey, in addition to those Train Directors regularly on duty in the said Tower A. One was a regularly assigned leverman in Tower A —second trick, who on the dates mentioned was off duty on a regular rest day; the other was a regularly assigned cycle-relief leverman, who on the dates mentioned was working the second trick at Tower A as a leverman in place of the regularly assigned leverman on rest. Both of these men, although qualified as Train Directors in the said Tower A and available to work on the dates mentioned herein as Train Directors in the Tower A, could not be used as Train Directors in the said Tower A because of a contract agreement between the defendant carrier and the organization authorized and certified to represent this class of employee. By reason of complying with the terms of the said agreement, Operators Spewak and Waterhouse worked 12 hours each in order to cover the existing vacancies.

The pertinent provisions of the law affecting the present situation are sections 62 and 63 of Title 45 U.S.C.A.

Section 62 reads as follows:

"It shall be unlawful for any common carrier, its officers, or agents, subject to sections 61–64 of this title to require or permit any employees subject to said sections to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employee of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employee who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: *Provided,* That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, re-

ports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week: *Provided further,* The Interstate Commerce Commission may after full hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case. Mar. 4, 1907, c. 2939, § 2, 34 Stat. 1416."

Section 63 concerns itself with the penalties for infraction of the law and procedures to be followed for recovery of penalties.

The Government alleges that under the agreed state of facts the defendant has rendered itself liable for violation of section 62, above cited. The Railroad in its defense sets forth the agreement between itself and the organization authorized and certified to represent the class of employees to which the operators mentioned in the complaint belong. That agreement contained the following arrangement for priorities in employment of operators:

1. Use a qualified regular extra or qualified extra employee to fill the position if one is available.

2. If the vacancy is on a position on which the 1 ﹒larly assigned employee is on rest day, he will be used if available.

3. If none of the above employees is available, then on positions where three men are assigned around the clock, each having an 8-hour tour, the two men having an assigned tour immediately before or immediately after the vacant tour, will be given the option of filling the vacancy by splitting the 8-hour tour, working 4 hours each in addition to their assigned tour of 8 hours.

From the statement of facts it would appear that there was no one available under the first two priorities. The Railroad then carried out the terms of the third paragraph of the agreement.

 It seems patent that the contract entered into between the Railroad and the representatives of the employees, in so far as the third of the methods of enforcing priorities is concerned, is violative of the express provision of the Hours of Service Act. This law was enacted by Congress on the grounds of public policy, and was designed to promote safety of the employees and of the traveling public. The terms of the Act are unequivocal and the only defenses to actions such as the instant one are the existence of an emergency as set forth in section 62, casualty, unavoidable accident, or the act of God as set forth in section 63. Nowhere is exception allowed because of contractual relations between the employer and accredited representatives of the employees.

Since neither casualty, unavoidable accident, nor an act of God can be spelled out of the situation now under consideration, there remains only the possibility of the existence of an emergency such as is contemplated by the provisions of the Act.

 The terms of the contract cannot be deemed effective in the creation of an emergency, since no contract which conflicts with the law may properly be entered into.

 The word "emergency" as used in the Act means an abnormal or unusual condition beyond an employer's control, and a condition beyond his reasonable power to remove or control. United States v. Atlantic Coast Line R. Co., 4 Cir., 153 F.2d 243; United States

**564**

v. New York Central R. Co., D.C., 64 F. Supp. 499; United States v. Delano, 7 Cir., 246 F. 107. The absence of Hann from his own duties was not such an emergency as could be met only by the action taken by the Railroad, as is evident from the fact that qualified employees of the employer other than Hann were available, who were not used because of the agreement between the Railroad and the operators' organization.

If, as has been pointed out by Judge Ford in the case of United States v. New York Central R. Co., supra, a state statute concerning duties of persons engaged in interstate movement of trains must yield to the Hours of Service Act, a fortiori no contract between an employer and its employees may be permitted to abrogate the Act.

The court finds the defendant liable for $500 penalty on each of four violations, and judgment may be entered in favor of the plaintiff and against the defendant in the sum of $2,000.

Let this opinion constitute findings of fact and conclusions of law.