UNITED STATES v. MISSOURI PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.  March 21, 1914.)

No. 4013.

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 13*)—VIOLATION OF HOURS OF SERVICE ACT—DE-FENSE.

    The proviso of section 3 of the "Act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," of March 4, 1907 (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), commonly known as the hours of service act, exempts a common carrier from liability for the penalty specified therein when, in a case of casualty, unavoidable accident, or the act of God, it necessarily requires or permits a telegraph operator, train dispatcher, or other employé of their class to serve longer than the time limited for his service by section 2 of that act. ·

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

    Hours of service of employés, see note to United States v. Houston Belt & T.. Ry. Co., 125 C. C. A. 485.]

2. MASTER AND SERVANT (§ 13*)—VIOLATION OF HOURS OF SERVICE ACT—DE-FENSE.

    An operator at a day office was in service at a station where the general limit of his service expired at 10 p. m. December 11th, and the limit of his four hours excess service in case of emergency at 2 a. m. December 12th. An unavoidable accident caused a wreck before 10 p. m. December 11th, and necessitated the continuous service of the operator until the wreck could be cleared. A relief operator could have been procured at the time of the accident, but the company expected to clear the wreck by 11 p. m. December 11th. Every effort to clear it at once was made, but unforeseen and unavoidable difficulties delayed the clearance until 5 a. m., and necessitated the operator's continued service until 6:35 a. m. December 12th. As soon as the delay was known, defendant attempted to procure a relief operator, but none could be found.

    *Held*, these facts fail to deprive the defendant of its defense to an action for the penalty for the violation of the hours of service act that the continued service of the operator was necessarily rendered in a case of casualty or unavoidable accident.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

3. PLEADING (§ 214*)—VIOLATION OF HOURS OF SERVICE ACT—DEMURRER TO ANSWER—EFFECT AS ADMISSION.

    A demurrer to an answer, in which the defendant alleged "that through no fault or negligence of .the defendant company, or its agents or servants, a derailment occurred on the line of the defendant," admits that, however high the degree of foresight and diligence required in relation to the derailment, the defendant exercised that degree, for so only could it be without fault or negligence.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

4. STATUTES (§§ 174, 175, 190*)—CONSTRUCTION.

    The apparent and natural meaning of the terms of a statute is always to be preferred to any curious hidden signification deduced by the reflection and ingenuity of acute and powerful intellects. Where the language of a statute is unambiguous, and its meaning plain, no room is left for construction.

    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 254, 266, 269; Dec. Dig. §§ 174, 175, 190.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. STATUTES (§ 185*)—CONSTRUCTION—AMBIGUITY.
    Where the legislative body makes no exception to a general and clear
enactment, the conclusive presumption is that it intended to make none,
and it is not the province of the courts to do so.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 264; Dec. Dig.
§ 185.*]

6. STATUTES (§ 184*)—CONSTRUCTION—PURPOSE.
    A rational practical interpretation of a statute, one which tends to pro-
mote the accomplishment of the purpose of the law, should be preferred
to one which is unreasonable or impracticable, or that would hinder the
accomplishment of that purpose.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. §
184.*]

7. STATUTES (§ 241*)—PENAL STATUTES—ESSENTIALS.
    A penal statute which creates a new crime and prescribes a punishment
for it must clearly state the persons or acts denounced. A person who,
or an act which, is not by the expressed terms or plain meaning of the
law clearly within the class of persons or within the class of acts it de-
nounces will not sustain a conviction.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec.
Dig. § 241.*]

    Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District
of Kansas; John C. Pollock, Judge.

Action by the United States against the Missouri Pacific Railway
Company, for violation of the hours of service act. From a judgment
for defendant the United States brings error. Affirmed.

Philip J. Doherty, of Washington, D. C. (Mr. Fred Robertson, of
Atwood, Kan., on the brief), for the United States.

W. P. Waggener and James M. Challiss, both of Atchison, Kan., for
defendant in error.

Before SANBORN and HOOK, Circuit Judges; and POPE, Dis-
trict Judge.

SANBORN, Circuit Judge. The United States complains that the
court below overruled a demurrer to the answer of the defendant and
rendered judgment in the defendant's favor in an action against it for
an alleged violation of the hours of service act. The plaintiff alleged
in its complaint that the defendant required and permitted its telegraph
operator at Meneger Junction, Kan., an office and station operated only
during the daytime, to remain on duty during the 24 hours, commencing
at 7 o'clock a. m. December 11, 1911, more than 13 hours, in violation
of "An act to promote the safety of employés and travelers upon rail-
roads by limiting the hours of service of employés thereon," approved
March 4, 1907, 34 Stat. 1415. The defendant answered that its oper-
ator at that station was on duty on December 11, 1911, from 7 a. m.
until 12 noon and from 1 p. m. until 6 p. m. and from 7 p. m. on that
day until 6:35 a. m. on December 12, 1911; that his hours of service
in excess of 13 hours were due to this casualty and unavoidable acci-
dent; that through no fault or negligence of the defendant, its agents
or servants, a derailment occurred on the main line of its railroad at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Nearman, Kan., which made it necessary to detour its trains from Leavenworth to Kansas City over the defendant's branch line through Meneger Junction; that the defendant used every effort to clear its track, and expected to have it cleared by 11 p. m. on December 11th at the latest, but unavoidable difficulties delayed its clearing until 5 a. m. December 12th; that there was no telegrapher on its branch line, on its main line, or on its Omaha Division that could be sent to relieve the operator at Meneger Junction at that time; that after the unavoidable delay an attempt was made to secure a relief operator, but none could be found; that at the time the wreck occurred it might have been possible to secure such an operator, but that the defendant did not know at that time that it would require so long to clear the main line. The plaintiff demurred to this answer, and counsel for the United States contend that the decision overruling that demurrer was erroneous: (1) Because the proviso of section 3 of the hours of service law is inapplicable to telegraphers, train dispatchers, and others of their class who fall under the terms of section 2 of the act; (2) because the failure of the defendant, under the circumstances pleaded in the answer to secure a relief operator, constituted no excuse for keeping the regular operator on duty after the expiration of the 13 hours of service specified for him in section 2 of the act; and (3) because the derailment pleaded in the answer was not such a casualty or unavoidable accident as justified the defendant in keeping the operator on duty beyond the 13 hours of service specified in the act.

The parts of the act material to the determination of these questions read in this way:

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, * * * and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, that no operator, train dispatcher or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only in the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period. * * *

"Sec. 3. That any such common carrier, or any officer or agent thereof, requiring or permitting any employé to go, be, or remain on duty in violation of the second section hereof, shall be liable to a penalty of not to exceed five hundred dollars for each and every violation. * * * Provided, that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen. * * *"

[1, 2] Are the provisions of section 2 which relate to telegraph operators, train dispatchers, and other employés of their class excepted from the declaration of the proviso of section 3, "that the provisions of this act shall not apply in any case of casualty or unavoidable accident,

or the act of God?" Counsel for the United States contend that this question should be answered in the affirmative because section 2 provides that telegraph operators and train dispatchers may serve "in case of any emergency" four hours longer than the time generally fixed for their services when there is no emergency, and they argue that this provision for four hours excess service limits all excess service by them, whether demanded by an emergency, a casualty, an unavoidable accident, or an act of God; that casualties, accidents, and grave catastrophies resulting from landslides, floods, and other external incidents bear more heavily upon other employés than upon telegraphers, and that the four-hour limitation in case of an emergency would become ineffective if any casualty, unavoidable accident, or act of God would relieve telegraphers from all limitation of the hours of service. But there are many emergencies in the operation of railroads which are neither caused by nor are they casualties, unavoidable accidents, or acts of God, and the application of the four-hour limitation of excessive service to such emergencies would give it ample scope and effect. Moreover, even if the meaning of the word "emergencies" were identical with the aggregate meanings of the words "casualties, unavoidable accidents and acts of God," neither of the two provisions under consideration would be ineffective and they would be only cumulative. Each would have force.

The chief object of the Congress in enacting the proviso in section 3 was to promote and insure the safety of travelers and employés on railroads in cases of casualties, unavoidable accidents, and grave catastrophies affecting the operation of railroads. The danger to travelers and employés upon trains running upon the roads from the absence of the service of telegraphers and train dispatchers who control their movements is vastly greater than from the absence of the service of any other class of employés, and that fact is a persuasive reason why the Congress excepted them, as well as all other employés, from the limitation of their hours of service fixed by section 2 of the act in every case of a casualty, an unavoidable accident, or an act of God. That Congress was of the opinion that it was more important to insure their continued service than that of any other class of employés under such circumstances is demonstrated by the fact that it permitted their service in any emergency whatever four hours longer than the time generally limited for their service, while it permitted no such excess of service to other employés in any case except in a case of casualty, unavoidable accident, or act of God. There are other reasons not less convincing why the position of counsel for the government is not tenable. If the parts of this act of Congress that are not relevant to the question under consideration are laid aside, the clear terms of section 2 prohibit the service of telegraph operators and train dispatchers in day offices more than 13 hours, and in cases of emergency more than 4 hours longer in 24 hours, prohibit the service of such operators and dispatchers in night and day offices more than 9 hours and in case of emergency more than 4 hours more in 24 hours, and prohibit the service of other employés more than 16 hours in 24 hours. The expressed terms of section 3 make every common carrier liable for a penalty of $500 for every violation of section 2, and declare that none of the pro-

visions of the act shall apply in any case of casualty, unavoidable accident, or act of God. If none of the provisions of the act apply in any case of casualty, unavoidable accident, or act of God, then the provisions of the act which prohibit the service of telegraph operators and train dispatchers in day offices for a longer period than 13 hours, and in case of emergency 4 hours more in 24 hours, do not apply in such cases, and so it is that the unambiguous terms of the act expressly declare that the limitations of the hours of service of telegraphers and train dispatchers in section 2 have no application in any case of casualty, unavoidable accident, or act of God.

[4] The apparent and natural meaning of the terms of a statute is always to be preferred to any curious hidden signification deduced by the reflection and ingenuity of acute and powerful intellects, and where the language of a statute is unambiguous and its meaning is plain, no room is left for construction. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 12, 2 L. R. A. (N. S.) 185; First National Bank of Anamoose v. United States, 206 Fed. 374, 124 C. C. A. 256, 46 L. R. A. (N. S.) 1139.

Congress had the right and the power to prohibit the application of all or of only a part of the provisions of the act in cases of casualties, unavoidable accidents, and acts of God. It enacted "that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God," and it made no exception. The construction for which counsel for the government contends requires the amendment of this prohibition by the interpolation of an exception therein so that it will read:

"That the provisions of this act, except those in section 2, which relate to the hours of service of the operators and train dispatchers and others of their class, shall not apply in any case of casualty, or unavoidable accident or the act of God."

[5] But where the legislative body makes no exception to a general and clear declaration of its will, the conclusive presumption is that it intended to make none, and it is not the province of the courts to do so. Madden v. Lancaster Co., 65 Fed. 188, 195, 12 C. C. A. 566, 573; Omaha Water Company v. City of Omaha, 147 Fed. 1, 13, 77 C. C. A. 267, 279, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Armour Packing Co. v. United States, 153 Fed. 1, 18, 21, 82 C. C. A. 135, 152, 155, 14 L. R. A. (N. S.) 400; Lafayette Co. v. Wonderly, 92 Fed. 313, 316, 34 C. C. A. 360, 363; Webber v. St. Paul City Ry. Co., 97 Fed. 140, 143, 38 C. C. A. 79, 82.

[6] Another approved rule of construction is that a rational, sensible and practical interpretation of a statute, one which will permit the accomplishment of the purpose of the act, should be preferred to one which is unreasonable or impracticable, or that would hinder or retard the accomplishment of that purpose. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 965, 72 C. C. A. 9, 13, 2 L. R. A. (N. S.) 185; Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29; American Bonding Co. v. Pueblo Investment Co., 150 Fed. 17, 27, 80 C. C. A. 97, 107, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; McPhee & McGinnity Co. v. Union Pacific R. Co., 158 Fed. 5, 17, 87 C. C. A. 619, 631. The purpose of the provision of section 3,

"that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God," evidently was to relieve the common carriers and their employés in such cases from all the provisions of the act limiting the hours of service of the latter, and the reason for the provision is plain. Congress perceived, and reflection will convince any one, that the protection, safety, and welfare of travelers and employés upon railroads require that in such cases hard and fast rules shall yield to the demands of humanity and the necessities of the cases. The times when such casualties will occur and when such cases will arise cannot be foreseen. An unavoidable accident is as likely to occur within the last as within the first 10 minutes of the limited 16 hours of the service of a trainman. It is as likely to occur within the last five minutes of the limited four hours excessive service of a telegraph operator as in the first minutes of his limited 9 or 13 hours of service. It is conceded that carriers and all their employés, except operators, train dispatchers, and members of their class, are exempt from the limitation of their hours of service in every case of casualty, unavoidable accident, or act of God. But it is more important, more essential to the protection of the safety and welfare of travelers and employés in cases of this character, that carriers and their telegraph operators should be relieved from the restrictions of their hours of service than that carriers and their other employés should be thus relieved. A telegraph operator in a day office is often the only operator within many miles of his station. It is often impossible and generally much more difficult speedily to find and bring a substitute to his place of service than it is to provide a substitute for an employé of any other class. A flood may wash out a bridge, a landslide may cover a railroad track with rocks and earth, a rail may break, and a railroad wreck may occur within a few minutes of the end of the 17 hours which marks the utmost limit of the service permitted an operator under section 2 of the act. Passenger trains and freight trains may rush towards the wreck, the lives, limbs, and suffering of men and women at the wreck, the stoppage of coming trains, and the prevention of greater injuries may be at stake on the continued service of the operator for many hours. It is incredible that the Congress intended to prohibit, or did prohibit, such extended service by operators, train dispatchers, and others in their class in cases of such casualties and unavoidable accidents. The object of the statute, the safety of travelers and employés, the necessities of the cases of railroad casualties and accidents, the demands of humanity, and a rational and practical interpretation of the statute converge with compelling force to convince that the Congress intended what it expressed, that "the provisions of the act," all the provisions of the act, those relating to the hours of service of telegraphers and train dispatchers, as well as those relating to the hours of service of other employés, "shall not apply in any case of casualty or unavoidable accident or the act of God."

[7] There is still another rule of construction that persuades to the same conclusion. This is a suit for the collection of a penalty of $500 for a violation of this act of Congress. The act created and denounced a new offense. A statute which creates a new offense and prescribes its punishment must clearly state the persons and the acts

denounced. An act which is not clearly an offense by the expressed will of the legislative body before it was done may not be lawfully or justly made such by construction after it is committed, either by the interpolation of expressions, or by the expunging of its words by the judiciary. And as this statute not only failed clearly to denounce as an offense requiring or permitting an operator or train dispatcher to serve beyond the hours limited in section 2 in case of a casualty, an unavoidable accident, or the act of God, but positively declared that in such a case the provisions of the act which denounced such excessive service, as an offense did not apply, the defendant may not lawfully be punished for such an act. United States v. Wiltberger, 18 U. S. (5 Wheat.) 76, 96, 5 L. Ed. 37; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 12, 2 L. R. A. (N. S.) 185; First National Bank of Anamoose v. United States, 206 Fed. 374, 376, 124 C. C. A. 256, 46 L. R. A. (N. S.) 1139.

And the result is that the plain terms of the statute, the reason of the case, and the rules and authorities upon the construction of statutes to which reference has been made have convinced that the proviso of section 3 of the "Act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907, commonly known as the hours of service act, exempts a common carrier from liability for the penalty specified therein when in a case of casualty, unavoidable accident, or the act of God it necessarily requires or permits a telegraph operator, train dispatcher, or other employé of their class to serve beyond the time limited for his service by section 2 of that act.

The next contention of counsel for the government is that the answer destroys the defense that the derailment therein pleaded presented a case of an unavoidable accident because it pleads no sufficient excuse for the defendant's failure to furnish another operator to relieve the operator in charge at Meneger Junction, in other words, that the answer fails to plead that the defendant was not negligent in this regard. But this is not an action for the negligence of the company in failing to procure a relief operator within a reasonable time. It is an action for requiring the service of the operator in charge more than 13 or 17 hours, in violation of section 2 of the act, and the answer is that this was a case of a casualty or unavoidable accident, and that the prohibition of requiring the operator's service more than 13 hours, or more than 17 hours, is inapplicable.

Again, if the penalty here sought could have been recovered on account of the negligence of the defendant in securing a relief operator, no such negligence was charged or pleaded. All persons are presumed to discharge their duties faithfully until the contrary appears, and there was therefore a legal presumption that the defendant exercised due diligence to procure such a relief operator and this presumption is sustained by these facts, which are alleged in the answer and admitted by the demurrer. The 13 hours limited by section 2 of the act for the service of the operator expired at 10 p. m. December 11th, and the 4 excess hours in case of an emergency expired on December 12th at 2 a. m. During the hours limited for this service, and prior to 10 p. m. December 11th, an unavoidable accident occurred

which exempted carrier and operator alike from these limitations of the operator's hours of service. The accident caused a wreck which made it necessary to detour trains from Leavenworth to Kansas City through the station of the operator and to keep him in service until the wreck was cleared. Every possible effort was made to clear away the wreck at once. When the wreck occurred the defendant expected to clear it by 11 p. m. December 11th, which would have been 3 hours within the 17 hours of service permitted in case of no accident. The company could have procured a relief operator at the time the wreck occurred, but it did not know and could not foresee that one would be necessary. It expected and believed that the wreck would be cleared by 11 o'clock. Subsequent unavoidable difficulties delayed the clearance until 5 a. m. December 12th, and made the continuous services of the operator necessary until 6:35 a. m. of that day. After the unavoidable delay became known, the defendant attempted to procure a relief operator, but none could be found. There was no evidence of culpable negligence in the fact that no effort was made to procure a relief operator before the unavoidable delay was known or could be foreseen, because at that time the evidence and expectation were that the clearance of the wreck would relieve the operator before the 17 hours expired. There was no evidence of negligence, but proof of diligence in the fact that as soon as the delay was known, an attempt was made to obtain a relief operator, though none could be found, and the conclusion is that there was nothing in the answer to deprive of its validity the defense that this was a case of an unavoidable accident which made the continued service of the operator necessary. United States v. Southern Pacific Co., 209 Fed. 562, 126 C. C. A. 384.

[3] Finally, counsel for the United States insist that the unavoidable accident, the derailment pleaded in the answer, was not a casualty or an unavoidable accident because the defendant failed to use due diligence to avoid it, and they quote this sentence from the opinion of this court in United States v. Kansas City Southern Ry. Co., 202 Fed. 828, 833, 121 C. C. A. 136, 141:

"To bring itself within the exceptions stated, the carrier must be held to as high a degree of diligence and foresight as may be consistent with the object aimed at, and the practical operation of its railroad."

But counsel are estopped from making this contention by their demurrer which admits this averment of the answer, "that through no fault or negligence of the defendant company, its agents or servants, a derailment occurred on the line of the defendant," and this is an averment that, however high the degree of diligence and foresight required in regard to this derailment, the defendant exercised that degree, for so only could it have been without fault or negligence.

The court below committed no error in overruling the demurrer to the answer and the judgment below is affirmed.

HOOK, Circuit Judge, dissents.