UNITED STATES v. DENVER & R. G. R. CO.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4183.

MASTER AND SERVANT ☞13—RAILROADS—HOURS OF SERVICE ACT—EMERGENCY.

In an action against a railroad company to recover penalties for violation of Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678), by requiring telegraph operators in a night and day office, who dispatched orders affecting the movement of trains, to remain on duty for more than 9 hours in 24-hour periods, an answer which alleges as a reason for such requirement that a train dispatcher in the office became "abusive, insubordinate, and defiant," and it became necessary to dismiss him, because his retention would have endangered the public, and that he was replaced as soon as possible, states a case of "emergency" within the meaning of the statute, which constitutes a defense.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.

Hours of service of employés, see note to United States v. Houston Belt & Terminal Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by the United States against the Denver & Rio Grande Railroad Company to recover penalties. Judgment for defendant, and plaintiff brings error. Affirmed.

Henry E. Lutz, Sp. Asst. Atty. Gen., of Denver, Colo. (Harry E. Kelly, U. S. Atty., of Denver, Colo., on the brief), for the United States.

J. G. McMurry, of Denver, Colo. (E. N. Clark, of Denver, Colo., on the brief), for defendant in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOU-MANS, District Judges.

T. C. MUNGER, District Judge. The United States brought an action against the defendant in error to recover penalties, because of violations of the Hours of Service Act. 34 Stat. 1415. It was charged that the defendant in error (hereinafter referred to as the railroad company) required and permitted telegraph operators, who dispatched orders affecting the movement of trains, to remain on duty more than 9 hours in 24-hour periods, in an office operated continuously day and night. A demurrer to the answer was overruled, and, as the plaintiff elected to stand upon the demurrer, the action was dismissed, and this proceeding seeks to review that action of the court.

The essential portion of the answer to one of the counts is as follows: The defendant alleges:

"That the defendant admits that H. A. Hulse remained on duty for a period longer than 9 hours in a 24-hour period, as in said first cause of action alleged; but defendant says that the said H. A. Hulse so remained on duty because of an emergency, and not otherwise, and that said emergency consisted, among other things, in this, to wit: That on or about September 8, 1912, one J. T. Barrett was employed by this defendant at the said station of the defendant at Salida, Colo., as train dispatcher, and had been in said employ for some time prior thereto; that on said day the said Barrett was called upon to explain the manner in which he had performed his duties shortly prior thereto, and that the said Barrett then and there exhibited violent temper, and became abusive, insubordinate, and defiant, and it became necessary to dismiss him from the service of the company because of such insubordination, and because his retention in the service thereafter would be inconsistent with discipline and dangerous to the interests of the company and to the safety of the public; that it was impossible to obtain a dispatcher or operator to take the place of the said Barrett until the 10th of September, 1912; and that until additional help could be obtained it was necessary to employ the said Hulse for more than 9 hours in a period of 24 hours."

The answer to the other counts of the petition varies only as to the name of the operator who had worked for more than a 9-hour period. Counsel for the United States contend that the facts alleged in the answer do not state a defense. This contention is amplified to the statements that the answer consists of legal conclusions only, and that the employment of an operator for more than 9 hours under the circumstances alleged is not an emergency provided by the statute.

The pertinent portion of section 2 of the act of Congress bearing on the questions involved, is as follows:

"That no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places and stations operated only during the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period of not exceeding three days in any week."

The allegations do not appear to be conclusions of law, but rather are conclusions of fact. To avoid prolixity in pleading, it is proper

to allege the ultimate facts, and this involves some conclusions or characterizations as to groups of circumstances. The allegations of the answer graphically exhibit the situation confronting the railroad company, the action it took, and the resulting hours of labor exacted of an employé, fairly apprise the plaintiff of the defense relied upon, and as against a demurrer the facts were sufficiently depicted.

It is urged that no emergency is shown, because insubordination by an employé is but a violation of the rules of employment, and a railroad company may not create an emergency at will by discharging an employé for infraction of rules, and thus require remaining employés to render extra labor. But in the situation alleged in the answer the railroad company did not create the emergency, but merely acted in one. Under the allegations of the answer that the employé became of violent temper, abusive, insubordinate, and defiant, the defendant could have shown that the employé had the power, disposition, and purpose to endanger the safety of those who traveled subject to his care by acts of omission or commission. The primary purpose of the act of Congress was to provide for the safety of those intrusted to the supervision of the employés, from the dangers arising from their lack of attention and misjudgment, owing to fatigue (Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878; United States v. Missouri Pac. Ry. Co., 213 Fed. 169, 130 C. C. A. 5); but the danger from such a source is not greater than arises from the disobedience, willfulness, or malice of employés.

The facts stated in the answer allege an emergency within the definition declared by this court in United States v. Southern Pac. Co., 209 Fed. 562, 126 C. C. A. 384, and the judgment of the lower court is affirmed.