## HODGSON v. FEDERAL OIL & DEVELOPMENT CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1925.)

### No. 6409.

**1. Mines and minerals ⊙⇒5—Lack of knowledge on part of claimant under placer mining laws of provisions of Leasing Act held not to operate as equitable suspension of six months' limitation contained therein.**

That owners of mining title under pre-existing placer mining laws, entitled under Oil Leasing Act Feb. 25, 1920, § 18 (Comp. St. Ann. Supp. 1923, § 4640¼i), to preferential right to oil lease on their relinquishment to the

United States within six months of all right, title, and interest under pre-existing placer mining law, did not have actual knowledge of provisions of such section, or limitation provided therein, *held* not to operate as an equitable suspension of such limitation, in view of section 32 (Comp. St. Ann. Supp. 1923, § 4640¼pp), and Regulations of Secretary of Interior, § 24½, under date of March 11, 1920.

**2. Mines and minerals ⊜⇒5—Claimant under placer mining laws, whose right to preferential lease was barred by limitation, held not entitled to impose trust on leasehold acquired by another.**

Claimant under placer mining laws, whose preferential right to oil lease under Oil Leasing Act Feb. 25, 1920, § 18 (Comp. St. Ann. Supp. 1923, § 4640¼i), had been barred by limitation, *held* not entitled to impose trust on leasehold estate acquired by another.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Suit by James M. Hodgson against the Federal Oil & Development Company and others. From a decree of dismissal (285 F. 546), plaintiff appeals. Affirmed.

J. M. Hodgson, of Denver, Colo. (R. P. Stewart, of Washington, D. C., on the brief), for appellant.

Harold D. Roberts and Paul P. Prosser, both of Denver, Colo. (Dines, Dines & Holme, of Denver, Colo., on the brief), for appellees.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

MILLER, District Judge. This case is here on appeal from an order of the lower court dismissing appellant's bill for want of equity. His bill, filed May 26, 1922, sought to have appellees declared trustees for appellant to the extent of an undivided one-eighth interest in an oil and gas lease granted by the United States to the Federal Oil & Development Company, covering the southeast quarter of section 13, township 40 north, range 79 west, Natrona county, Wyo., and for an accounting. The facts alleged, omitting jurisdictional allegations and some details, are substantially as follows:

On January 11, 1887, the above-described quarter section was vacant and unappropriated domain of the United States, open to location, exploration, and purchase under the placer mining laws then in force. On that day George McManus, H. T. Snively, G. B. Hall, M. Iba, Perry Doan, William F. Ford, Martin Ashcraft, and Sam Bedsaul, all qualified so to do, did associate

themselves together for the purpose of locating, holding, and working the said quarter section as an oil placer mining claim, and did so locate said premises as an association oil placer mining claim, by complying with all the laws, rules, and regulations, both federal and state, required to lawfully make such location, and thereafter did make discovery of valuable deposits of minerals, to wit, petroleum and other mineral oils, in and upon said premises. That said claim is situated within the limits of the area embraced within the executive order of withdrawal issued by the President of the United States under date of September 27, 1909, which said order of withdrawal was never recalled or revoked prior to the 25th day of February, 1920. That at the date of the executive order of withdrawal the said claim was a valid and subsisting mining claim under the mining laws of the United States. That the interest and estate of George McManus, his heirs, and this appellant in said premises have never been forfeited or abandoned. That George McManus died intestate on or about September 16, 1901, leaving as his sole heirs at law the widow, Anna McManus, a daughter, Octavia Green, formerly Octavia McManus, and a grandson, Charles F. Trusty. The widow and daughter have never been citizens or residents of Wyoming and have never been within that state. The grandson was never in the state until ——— years immediately preceding the commencement of this action. None of them ever had any actual knowledge of the existence of said placer mining claim, or of the interest or title of George McManus therein, and no actual knowledge or information of any kind leading to knowledge of their rights in the premises, until February 11, 1922, and shortly afterward. That none of said heirs of said George McManus, deceased, had or acquired until February 11, 1922, any actual knowledge of the right and privilege granted them by the Act of Congress approved February 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ff, 4640¼g–4640¼ss), known as the Oil Leasing Bill, to make application within six months after the approval of said act for and to be granted an oil and gas lease on said premises or for an undivided one-eighth part thereof, and granting and confirming to them as owners of the mining title under pre-existing placer mining laws the preferential right to an oil lease theretofore located as oil placer mining claims under the laws of the United States, upon which there had been discovered oil in substantial quantities prior to said executive order of with-

drawal. That on the said 11th day of February, 1922, the said heirs at law, for a valuable consideration paid to them by the appellant, by proper deeds of conveyance, duly sold and conveyed all their right, title, and estate in said premises to the appellant herein, who is now the owner and holder thereof.

During his lifetime McManus never sold, conveyed, or incumbered his interest in said property, nor did any other person, lawfully authorized so to do, ever sell, assign, or convey the interest of said McManus in said premises, or any part thereof, to any person or corporation whatever. That on March 11, 1884, George McManus, Perry Doan, Sam Bedsaul, Scott Morford, James McFarland, William Hudson, and William Meyers gave to Shepard Fales and Cy Iba a power of attorney to jointly locate for said principals oil placer mining claims in Carbon county, then territory of Wyoming, now Natrona county, Wyo., and delegated the power to said Fales and Iba to jointly sell and convey as agents of said principals such placer mines as might be located by them as attorneys in fact for their said principals. This power of attorney was never executed by Fales and Iba, but Cy Iba did attempt to exercise it on February 18, 1890, by executing a deed as the pretended attorney in fact of McManus and his colocators of the said claim, purporting to convey to one Victoria A. D. Johnson an undivided one-half interest in said premises. Fales did not join in this deed.

In March, 1900, Ashcraft and Bedsaul conveyed to Cy Iba their interest in said premises. On April 12, 1905, Cy Iba, by a quitclaim deed stating on its face that it conveyed an undivided one-half interest, conveyed his interest to Joseph H. Lobell. On February 16, 1907, Victoria A. D. Johnson, by quitclaim deed purporting on its face to convey an undivided one-half interest in the premises, conveyed to Frederick J. Lobell her interest in said premises. Two days later by similar quitclaim deed Frederick J. Lobell conveyed the same to Joseph H. Lobell, his brother. On August 16, 1915, Joseph H. Lobell conveyed all his interests thus received to the appellee, the Federal Oil & Development Company.

On May 15, 1918, the Federal Oil & Development Company applied for a mineral patent to the premises. This application was adversed by the United States and the application withdrawn on March 25, 1920, about one month after the passing of the Oil Leasing Act, approved February 25, 1920.

In considering that application for a mineral patent the General Land Office found as a matter of law that George McManus owned at that time an undivided one-sixteenth interest in the said placer mining claim, but afterwards, on the application of the appellee, the Federal Oil & Development Company, for the oil lease in question here, reversed that decision, and held that all of the title of McManus had passed to the Federal Oil & Development Company by purchase. That in so holding and granting the said lease to the Federal Oil & Development Company the Commissioner of the General Land Office and Secretary of the Interior mistook, misconstrued, and misapplied the law applicable to undisputed facts before them, and by reason of such mistake, misconstruction, and misapplication of the law applicable thereto, granted the said oil and gas lease to said appellee the Federal Oil & Development Company. That the appellees, and each of them, had full knowledge and notice, actual and constructive, of the claim, right, title, interest, and estate of the said George McManus, his heirs, and their successors in interest in and to an undivided one-eighth interest in said premises and the oil contents thereof, and of their right under the law to an undivided one-eighth interest to any oil and gas lease of said premises that might be granted by the United States under the provisions of the Act of Congress approved February 25, 1920.

That appellant's grantors at the date of said lease were, and this appellant is now, a cotenant of the said appellees, and each of them, in said leased premises and leasehold under said oil and gas lease granted to the said appellee the Federal Oil & Development Company, and is entitled to an undivided one-eighth interest in and to the said oil and gas lease and the oil extracted therefrom, subject to the deduction and payment of the cost and expense of development, operation, production, and the payment of the royalty to the United States. That said appellees hold any and all oil that has heretofore been and may hereafter be produced and sold from said premises as trustees for this appellant. That the appellees are in actual possession of said premises under said lease and now engaged in extracting oil therefrom in large quantities, selling the same, and appropriating to their sole use the net proceeds of said oil and excluding the appellant from any interest or share therein and refusing to recognize the rights of the appellant therein. That appellant offers to do equity in the premises, and is willing to do and

perform all acts and things that may be required of him by the court as a condition to granting the relief sought in this action, conformable to the rules and practice of equity.

On August 21, 1920, the Federal Oil & Development Company applied for an oil and gas lease to the premises under the provisions of section 18 of the Act of Congress of February 25, 1920 (Comp. St. Ann. Supp. 1923, § 4640¼i), and those proceedings culminated in the issuance of an oil and gas lease to the appellee, the Federal Oil & Development Company on March 25, 1921, which company on April 28, 1921, assigned a fraction thereof to the appellee the Mountain & Gulf Oil Company.

Appellant prays judgment that he be decreed to be the owner of an undivided one-eighth interest in and to said leased premises, and of an undivided one-eighth interest in all petroleum, oil, gas, and other mineral contents of said premises for and during the term of the lease, renewals, and extensions thereof, and of an undivided one-eighth interest in all oil extracted and produced therefrom by the appellees as trustees for the appellant. That appellees be ordered to execute and deliver to appellant a proper instrument of assignment conveying an undivided one-eighth interest in and to said oil and gas lease, and appellees be ordered to account to appellant for all oil produced from said leased premises or the proceeds thereof.

To this bill appellees filed identical motions to dismiss on the following grounds: (1) That the bill fails to state facts sufficient to constitute a cause of action; (2) that the appellant has been guilty of laches; (3) that the relief is barred by the limitations contained within the Act of Congress of February 25, 1920; (4) the statutes of limitations of the state of Wyoming; (5) a final determination and adjudication of all matters in controversy between the appellant and the appellees by the Secretary of the Interior of the United States against all rights claimed by appellant; and (6) that the United States is an indispensable party to the action.

On the 16th day of December, 1922, after argument, the court sustained said motions and entered its order dismissing the said bill, to which order the appellant duly excepted. Appellant alleges and specifies error on the part of the trial court in sustaining said motions on each and every ground thereof.

Appellant's contention is that the Land Commissioner and Secretary of the Interior misapplied, mistook, and misconstrued the law applicable to the facts before them, in finding and concluding as a matter of law that the several conveyances set forth in appellant's bill conveyed to and vested in the appellee the Federal Oil & Development Company the interest and estate of George McManus in the premises described about August 26, 1915, and that the mining title to said premises was not in issue, and further that the title held and possessed by the appellee the Federal Oil & Development Company, at the date of its application for the lease in question, was sufficient in law to entitle it to the lease issued under the provisions of law applicable thereto, and that the quitclaim deed of the Federal Oil & Development Company to the United States conveyed and relinquished to the United States the interest and estate of George McManus, and that it was by reason of such misconstruction and misapplication of the law that the lease in question was granted to the said appellee; that as a matter of fact and as a matter of law it appears from the bill that prior to and on the date of appellee's (the Federal Oil and Development Company's) application for and the date of the granting to said appellee by the United States of the oil and gas lease in question, appellant's grantors and appellee the Federal Oil & Development Company were cotenants of the premises described in his bill, appellant's grantors owning an undivided one-eighth interest therein; that because of said cotenancy the rights, interests, and estate acquired by the appellee the Federal Oil & Development Company under said lease inured to the benefit of all cotenants, and, therefore appellant, as owner of the McManus undivided one-eighth interest in said premises, is entitled to have said lease impressed with a trust to that extent.

It is not pretended that the alleged mistakes of law set forth in the bill invalidate the lease or prevent the passing of the title to the lessee. The contention is that the facts alleged are sufficient in equity to justify a court of equity to impress the lease with a trust in favor of appellant.

Section 18 of the Oil Leasing Act, approved February 25, 1920, provides the sole conditions upon which a lease under any circumstances could have been issued to appellant or his predecessors. The applicable portion of that section is as follows:

"That upon relinquishment to the United States, filed in the General Land Office within six months after the approval of this act, of all right, title, and interest claimed and possessed prior to July 3, 1910, and continuously since by the claimant or his predeces-

sor in interest under the pre-existing placer mining law to any oil or gas bearing land upon which there has been drilled one or more oil or gas wells to discovery embraced in the executive order of withdrawal issued September 27, 1909, * * * and upon payment as royalty to the United States of an amount equal to the value at the time of production of one-eighth of all the oil or gas already produced, * * * shall be entitled to a lease thereon from the United States for a period of twenty years. * * * All leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interest may appear. * * * "

Section 32:

"That the Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this act." Comp. St. Ann. Supp. 1923, § 4640¼pp.

Section 24½, Regulations of the Secretary of the Interior, under date of March 11, 1920, provides:

"All proper parties to a claim for relief under sections 18, 19, or 22 of the act, should join in the application, but, if for any sufficient reason that is impracticable, any person claiming a fractional or undivided interest in such claim may make application for a lease or permit, stating the nature and extent of his interest, and the reason for non-joinder of his co-owner or co-owners. In cases where two or more applications are made for the same claim or part of a claim, leases or permits will be granted to one or more of the claimants, as the law and facts shall warrant and shall be deemed just."

[1] It therefore appears that before appellant or his predecessors in interest would be entitled to any lease from the government for any interest in said premises, he or they must, within six months after February 25, 1920, have relinquished to the United States all their right, title, and interest claimed or possessed prior to July 3, 1920, and continuously since by such applicant or his predecessors in interest under the pre-existing mining law to any oil or gas bearing land embraced in the executive order of withdrawal of September 27, 1909, and have paid to the United States as royalty an amount equal to the value at the time of production of one-eighth of all the oil or gas already produced. Neither compliance or attempted compliance with such conditions are alleged or pretended but the bill expressly neg-

atives such facts. It is, however, alleged in the bill that appellant's grantors were without actual knowledge of the provisions of section 18 of the Leasing Act until February 11, 1922, and appellant argues that such lack of actual knowledge in some equitable manner operated to suspend the six months limitation provided for in said act. We think a sufficient answer thereto is that the statute makes no such exception; but see Madden v. Lancaster County, 65 F. 188, 194–195, 12 C. C. A. 566; U. S. v. Missouri Pac. Ry. Co., 213 F. 169–173, 130 C. C. A. 5.

[2] The question then under the third ground of the motions is narrowed to whether the appellant may impose a trust on a leasehold that neither he nor his grantors at any time were or now are entitled to receive, or any part thereof, from the lessor. We think the law on this question is well settled. The rule is aptly stated in Anicker v. Gunsburg and Others, 246 U. S. 110, 38 S. Ct. 228, 62 L. Ed. 603, where it is said:

"In order to maintain a suit of this sort the complainant must establish not only that the action of the Secretary was wrong in approving the other lease, but that the complainant was himself entitled to an approval of his lease, and that it was refused to him because of an erroneous ruling of law by the Secretary."

See, also, Duluth & Iron Range Railroad Co. v. Roy, 173 U. S. 587, 19 S. Ct. 549, 43 L. Ed. 820; Bohall v. Dilla, 114 U. S. 47, 5 S. Ct. 782, 29 L. Ed. 61.

Because the bill fails to allege compliance or an attempt to comply with the requirements of section 18 of the Act of Congress approved February 25, 1920, it does not state a cause of action in equity, and therefore was properly dismissed for want of equity under the third ground of the motions to dismiss. That being true, other questions raised and argued do not require our consideration.

The order of the lower court is affirmed.

STONE, Circuit Judge (dissenting). This is a bill by appellant, Hodgson, against the Federal Oil & Development Company and the Mountain & Gulf Oil Company to have them declared trustees for him of his one-eighth interest in the oil and gas lease covering certain public land in Wyoming, and which was made under the so-called "Oil Leasing Act" (Act Feb. 25, 1920, 41 Stat. 437). Appellees filed identical motions to dismiss which, as amended, were based upon the grounds of insufficiency of allegations of fact, laches, bar by the limitations of the

"Oil Leasing Act" (section 18), bar by limitations under the statute of the state of Wyoming, res adjudicata by determination of the Secretary of the Interior, and lack of necessary party defendant (the United States). The trial court handed down a memorandum opinion wherein, without expressing any decision as to other points raised by the motions, it determined that the bill should be dismissed because barred by the statute of limitation of the state of Wyoming and because of laches. From a decree dismissing the bill, this appeal is brought.

The essential allegations of the bill, in so far as the motions to dismiss are concerned, are as follows:

On January 11, 1887, eight natural persons located the O'Glase claim on the S. W. ¼ of section 13, township 40, range 79, in what is now the county of Natrona, Wyo. The location was made under the placer mining laws. The requisite labor and development were performed upon the claim, up to and including the year 1920.

Among these eight locators was George McManus, who subsequently died in 1901, leaving, as his heirs at law, a widow, a daughter and a grandson, who were never residents of the state of Wyoming, with the exception of the grandson, who became such a short time before the commencement of this suit. These heirs did not know and had no information leading to knowledge of the right, title or interest of the said George McManus in the lands in controversy until about the date of the assignment hereinafter mentioned. In February, 1922, these heirs at law assigned all their rights in the property and premises to the plaintiff, who is a resident of Wyoming. The requisite discoveries, work and possession of this claim were made by and remained continuously in McManus and his colocators, and they became entitled to a patent therefor under the terms of section 2332 of the Revised Statutes (Comp. St. § 4631) and the Act approved February 11, 1897 (29 Stat. 526 [Comp. St. § 4635]). This claim was situated within the area embraced by the executive order of withdrawal, dated September 27, 1909, and that said order was not withdrawn or revoked until the Oil Leasing Act of February 25, 1920. At the date of said withdrawal order, this mining claim was a valid and subsisting placer claim under the statutes of the United States, and the property of George McManus and his colocators. The rights of McManus and his heirs therein have never been transferred, forfeited or abandoned except as assigned to appellant.

On August 21, 1920, the defendant Federal Oil & Development Company (claiming as the successor in interest of the locators) filed an application for a lease of the above described lands under the Oil Leasing Act. On March 25, 1921, a lease to said defendant was recommended by the Commissioner of the General Land Office and, on April 1, was ratified and confirmed by the Secretary of the Interior and was issued to said defendant as of August 21, 1920.

Further, the bill alleges erroneous representations on the part of the applicant for the lease and sets out certain findings of the Commissioner and Secretary and particularly alleges errors of law committed by these officers in awarding the lease to the defendant company.

Among other things, it is alleged that the Department of the Interior found that five of the locators in 1886 gave to one Cy Iba a power of attorney to locate lode and placer mining claims in the Rattlesnake mining district in the county of Carbon, territory of Wyoming (the mining district in which the claim in controversy was then located), and that in 1884 a similar power of attorney was granted by some of the locators to said Iba and one Fales to do practically the same things. McManus was one of the locators executing the latter power of attorney. These powers of attorney, in addition to granting the right to the attorney to locate claims, gave the right to sell and convey said claims for their principals.

On February 18, 1890, Cy Iba executed and delivered a quitclaim deed of an undivided one-half interest in the O'Glase claim to Victoria A. D. Johnson, and on April 12, 1905, Iba conveyed an undivided one-half interest in the claim to Joseph H. Lobell. On February 16, 1907, Victoria A. D. Johnson conveyed her undivided one-half interest to Frederick J. Lobell, who two days later conveyed this interest to Joseph H. Lobell, and who in turn, on August 26, 1915, conveyed the entire claim to the defendant Federal Oil & Development Company.

The department then held that the so-called powers of attorney granted to Cy Iba were deeds of trust by which Iba was authorized to sell and convey claims of the character of the O'Glase after they had been located, and such deeds of trust were not revocable without the consent of Iba, which consent he did not give to any one, and that it followed that Iba had the authority to convey the legal title to the O'Glase claim, which he did in the manner before specified, all of which was shown by the abstract of title filed

with the application, and that the applicant thereby became the holder of the fee title and, having surrendered the same to the United States, was entitled to the lease which it subsequently received.

Plaintiff alleges that the Department of the Interior committed an error of law in that the only power of attorney executed by McManus was the one in 1884, which was a joint power to Iba and Fales, and that Fales not having joined in any transfer with Iba, the attempted transfers were ineffectual and void in law, which transfers were held valid by the department; and further, that the records did not show that the O'Glase claim was actually located by either the said Iba or Fales under the power of attorney, but alleges the fact to be that they were located by the locators themselves. It is alleged that in the letter and decision of the land commissioner it was found that the Federal Company had, on May 15, 1918, filed mineral application No. 016998, Douglas Series, for said land, and on December 8, 1919, adverse proceedings had been ordered therein, but that such application was withdrawn and the case closed, March 25, 1920. It alleges that Fales never joined with Iba nor was named as a grantor nor in any way joined in the above two deeds by Iba; that the deeds by Iba were executed by him in his sole behalf and not as attorney in fact for McManus or any other of his colocators; and that this character of the Iba deeds and the lack of co-operation therein by Fales was clear upon the face of the deeds themselves and that no other conveyances even purporting or claiming to convey the interest of George McManus are in existence. It is claimed that these deeds by Iba, which constitute the sole basis of appellees' claim, conveyed no part of McManus' interest in the placer claim; that the adjudication to the contrary by the Secretary of the Interior was erroneous as matter of law on the facts and documents before him; that the sole right of the Federal Company to the lease rested upon its allegation of ownership of the placer claim; that the procurement of the lease upon this basis would inure to all owners of the placer claim in proportion to their interest therein; that it would hold such lease as trustee for such owners; that one of such owners, being a cotenant in the placer claim, is appellant as the successor of the McManus interests, amounting to one-eighth of the whole.

The bill offers to do equity and asked a declaration of this one-eighth interest and an accounting.

I. Logically the first ground for attack upon the bill which should be considered is whether there is an absence of necessary parties. It is strongly urged that the United States is an indispensable party because section 30 of the Oil Leasing Act (Comp. St. Ann. Supp. 1923, § 4640¼oo) provides "that no lease issued under the authority of this act shall be assigned or sublet, except with the consent of the Secretary of the Interior," and that an assignment of an undivided one-eighth interest in the lease is prayed for in the bill. It is most probable that the matter primarily intended to be covered by this statutory provision was a *voluntary* change by the lessee of his relations to the lease through assignment or subleasing. However, the situation is not similar to that where a patent has been issued to public lands and the dispute arises between the patentee and some one else as to the right to the land and patent. In the latter case, the government has parted with all interest in its property and is not further concerned, in a proprietary sense, in the ownership. The contest is purely between private parties and it in no way affects the government how that contest may terminate. In the matter of oil leasing under this act, however, there is another situation. Here the government has not parted with its property. It has merely contracted away a right of exploitation for a limited period, this exploitation to be done (according to the terms of section 32 of the act) under necessary and proper rules and regulations safeguarding the interest of the government and securing the performance of the contract. The act gives a preference in application for leases to those having existing placer claim rights to the land in question; but even such preferred persons cannot secure such leases and the benefit of the act unless and until they comply with the "necessary and proper rules and regulations" authorized by section 32 of the act.

While the courts may decide who is entitled to preference (as placer claim locators) under the act and may correct the department where its decisions in that respect are erroneous in matters of law, yet the person thus found to be entitled to this preference is in no better position than if his right had been freely recognized by the department in the first place. He must still qualify, under such department rules and regulations, before he can occupy the status and secure the benefits of a lessee. While not advised in this regard as to what regulations, if any, the department had or has in force governing these leases, yet the power and authority

given by the act to prescribe such and the direct requirement, in the act itself, that no assignment shall be made without the consent of the department clearly evinces the legislative concern in the control by the department of these leases and the operation under them so that the public rights may be safeguarded and enforced. On the other hand, it may be said, section 18 provides that "all leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear, subject, however, to the same limitation as to area and acreage as is provided for claimant in this section." The words "or otherwise" in the above quotation would seem broad enough to cover a claim that the lessor was a trustee. This matter is not free from doubt, but I am inclined to think that the fact that the interest claimed by appellant is an undivided interest in minerals in place is a material and, possibly, a determinative consideration. If the appellant is, as he alleges, a tenant in common in such property, the right would exist, if the property were privately owned, in any tenant to exploit it, provided he accounted to his cotenants for their shares of the net results. It would be possible legally to segregate and divide the undivided interest in such property when and in so far as mined. If the property involved, instead of being privately owned, is a part of the public domain which can be exploited only as allowed by law, and if one of the cotenants has secured this exclusive right to exploitation it would seem that an accounting for the net results would not in any wise affect the lessee or the government in its relation thereto and that a lease of this character would, in its very nature, be indivisible and therefore unassignable in part.

If appellant, as a cotenant, wished to exploit his property, he might or might not be able to obtain a lease to do so. But if it were possible for him to so operate and his one-eighth interest were freely recognized, he would yet have to account for seven-eighths of his net results from production just the same as he is now asking appellees to account for and recognize his right to one-eighth of their net production.

Appellant's prayer is clearly in the alternative and intended to cover situations both of a trust relation and of a cotenant relation. My judgment is that his allegations, if establishing a cotenancy in the placer mining claim, could result only in establishment of a trust relation as to this lease. If this be true, and the result of that relation is solely

that appellees shall account to him for one-eighth of the net results of operations under the lease, I do not see how the government is interested or affected by this controversy. Therefore, I think the United States is not a necessary party.

II. It is next contended that the award of the government lease under the Oil Leasing Act was an adjudication in rem, binding upon the courts. I cannot accept this contention. It may be conceded that the department is given authority to determine questions of fact as to who comes within the various terms and classifications of the act, but the department is not permitted to mistake the law which it is authorized to apply. It is always allowable for a dissatisfied party to have the proper court examine the action of a department to ascertain whether the interpretation and application of the law by it has been correct. Appellant challenges this action of the department in that respect, alleging that upon the facts before the department and upon which it acted and which he does not challenge, it misapplied the law. This he is entitled to have examined.

III. It is also claimed that the cause of action is barred by the limitation contained in section 18 of the Oil Leasing Act, wherein it is provided that such placer claimants may "upon relinquishment to the United States, filed in the General Land Office within six months after the approval of this act, of all right, title and interest * * * be entitled to a lease thereon. * * *" The claim is that as neither appellant nor his predecessor made any assertion of their rights within the above six-months period, they are barred from any participation or interest in the lease or its proceeds. I think that such is not the meaning of the statute. If appellant were seeking to obtain a lease from the government he might well be barred by this language; but what he is asking is not something additional from the government but to have declared and enforced an interest, which he claims to have, in a lease granted by the government within the six-months period. The purpose of the above limitation seems to be to fix a period within which those claiming existing placer mining rights may assert them and establish their preference to leases over others who might want to apply for permits, under this statute, to explore land on the public domain.

IV. It is claimed that the bill is, under its allegations, barred by the statute of limitations of the state of Wyoming. I do not understand that federal courts are bound by state statutes of limitations in actions in eq-

nity, although such state statutes may have much bearing on the matter of laches as to influence federal courts in equity cases often to act in analogy with such statutes. Ide v. Carpet Co., 115 F. 137, 148, 53 C. C. A. 341 (this court). This disposes of the contention that the court is bound by the statute of Wyoming and that statute becomes pertinent only in connection with the next ground, which is laches.

V. It is strongly contended that this bill is barred by laches. The material allegations of the bill bearing on this contention seem to be as follows: Appellant alleges that he and his colocators were in possession and did the usual work required by the placer mining claim laws from the location of the claim in 1887 down to the present time and that they were in open, notorious and adverse possession down to and including the time when the land was withdrawn by executive order, and that order was not recalled until February 25, 1920, when the Oil Leasing Act was enacted. The conveyances made by Cy Iba of an undivided one-half interest in the claim in 1890 can hardly be urged as constituting any color of title to the one-eighth undivided interest of McManus; particularly as five of the other locators had given Iba a power of attorney in 1886 while McManus had never given such authority except to Iba and Fales jointly. Had this been the only conveyance made by Iba, it must be presumed that it would have been of those undivided parts which he had authority to convey rather than of that part which he, acting alone, could not legally convey. Therefore the bill does not allege any fact which even in its most unfavorable interpretation, could be construed as adversely affecting the title or interest of McManus until Iba undertook to convey a second one-half undivided interest to Joseph H. Lobell on April 12, 1905. But these conveyances alone, if Iba had no legal authority to transfer the McManus interest, could not affect that interest unless there had been such an assertion of title by the grantees as to amount to adverse possession or to require opposing action by McManus to prevent laches in the assertion of his rights. The bill alleges that McManus and his co-locators had possession at all times and particularly to the time when the withdrawal proclamation became effective. While I have not been able to procure the withdrawal proclamation to ascertain just what effect it would have upon the exercise of the rights of placer claimants to land covered by the proclamation, yet I apprehend it must have prevented, from the time it became effective until the passage of the Oil Leasing Act (from 1909 to February 25, 1920), any exercise of rights in respect to mineral claims on such land. If that be true, there could, during that period, be no possession or adverse possession by any one in so far as placer minerals were concerned and that period should be regarded as a suspension of rights and duties of rival claimants in respect to such property. The only indication in the bill of any action by either party during that period are the broad statements that McManus and his colocators kept up their work and kept possession continuously; the statements quoted from the letter and decision of the Land Commission in connection with the granting of the lease to the effect that, "on May 15, 1918, the aforesaid applicant company filed mineral application No. 016998, Douglas Series, for said land, and by letter 'FS' of December 8, 1919, it was ordered that adverse proceedings be had in said case, but the application was withdrawn, and by letter 'FS' of March 25, 1920, the case was closed"; the further statements in the same document, that "the status of the fee title to the claim was considered by this office in the letter 'FS' of December 8, 1919, in regard to the mineral application aforesaid, and it was held that the title in the land was as follows: Federal Oil & Development Company, ten-sixteenths interest; M. Iba, one-sixteenth interest; H. T. Snively, one-sixteenth interest; George McManus, one-sixteenth interest; Perry Doan, one-sixteenth interest; William F. Ford, one-sixteenth interest; George B. Hall, one-sixteenth interest." I think we have no right to conclude from the bill that there was any adverse possession on the part of the appellees or their predecessors (Victoria A. D. Johnson and the Lobells) during this period or that there was any assertion of rights which would call into play a necessity for McManus or his heirs asserting themselves until application of the Company May 15, 1918, as quoted above; and the adverse proceedings declared in that case seem to have continued until March 25, 1920, when the case was closed. No further movement on the part of appellees is evidenced in the bill until the application made on August 21, 1920, for this lease. The granting of the lease was not approved by the Secretary until April 1, 1921, and this bill was filed May 26, 1922.

A very essential element in laches is knowledge. The allegation of the bill is that there was no knowledge on the part of the

heirs of McManus of any of their rights until February 11, 1922, about three months before the bill was filed. When it is considered that this claim was located in 1887, that McManus died in 1901, that the land was withdrawn by the government from 1909 to 1920, and that development therein was suspended from 1909 until after April 1, 1921 (the date of the lease), and when it is borne in mind that none of the heirs lived near the property or in the state, I am doubtful if such laches appears on the face of the bill as would justify its dismissal. It may be that when issues are joined and evidence introduced this will be shown, but that is not now before us.

I think the decree of dismissal should be reversed, with instructions to set aside the order of dismissal and reinstate the case for such action as counsel may be advised.